STATE OF NORTH CAROLINA v. MARK A. JENKINS

No. 419A83

(Filed 5 June 1984)

**1. Criminal Law § 75.4— custodial interrogation—invocation of right to counsel— admissibility of subsequent confession**

Defendant's confession made after he had previously invoked his right to counsel during custodial interrogation was admissible into evidence where the trial court's conclusions that (1) defendant initiated the conversation with the officer which resulted in the inculpatory statement and (2) defendant knowingly and intelligently waived his previously invoked right to counsel were supported by evidence and findings that after defendant had requested an attorney and questioning had ceased, defendant asked an officer to come to see him in the morning; the following morning the officer went to the jail and asked a jailer to check with defendant as to whether defendant still desired to talk with him; the jailer reported that defendant did want to talk with the officer; the officer and defendant went to an interview room where the officer again advised defendant of his rights; shortly thereafter, defendant told the officer that he wanted to talk to him "person to person," and the officer told defendant that anything he said would be recorded and used in court; defendant thereafter made a statement admitting his role in the commission of the crime; and the officer did nothing by action or threat to coerce defendant into making a statement and did not promise defendant anything in return for his statement.

**2. Criminal Law §§ 75.16, 146.1; Infants § 17— confession by juvenile—right to have parent present—absence of warning—failure to raise in trial court**

The seventeen-year-old defendant could not raise on appeal the issue of failure to suppress his confession because he was not advised of his right as a juvenile to have his parent, guardian or custodian present during interrogation in accordance with G.S. 7A-595(a) where the failure to warn in accordance with the statute was not raised in the motion to suppress and was not argued in the trial court.

**3. Constitutional Law § 63; Jury § 7— exclusion of jurors for capital punishment views—cross-section of community**

Defendant was not denied a fair determination of his guilt or innocence by a jury constituting a representative cross-section of the community when the trial court permitted challenges for cause of jurors who would be unwilling to impose the death penalty.

**4. Jury § 7.14— peremptory challenge of black veniremen**

The trial judge did not err in overruling defendant's objection to the State's use of peremptory challenges to excuse certain black veniremen where there was no evidence in the record that prospective jurors were peremptorily challenged by the State on the basis of race.

APPEAL by defendant from *Battle, Judge,* at the 11 April 1983 Criminal Session of CUMBERLAND Superior Court.

Defendant was charged in an indictment, proper in form, with first-degree murder and first-degree burglary.

The State's evidence tended to show that on 31 July 1982, the body of Ingrid Valenzuela was found in the bedroom of her home, which was located just beyond the city limits of Fayetteville, North Carolina. The screen at the front door of the dwelling had been torn or cut. There was blood on the bed where the victim was found and the walls of the bedroom were splattered with blood. Parts of a knife blade and knife handle were found under the body.

Medical testimony disclosed the presence of about two dozen stabbing or cutting wounds to the back, neck, face, chest and arm areas of the body. It was the opinion of the pathologist who examined the body that these wounds caused the victim's death.

On 29 July 1982, Johnson Freitas told one Brian Moore that he (Freitas) and Mark Jenkins were involved in the murder of Mrs. Valenzuela. Moore gave this information to Sergeant Daws of the Cumberland County Sheriff's Department. Acting pursuant

to this information, on 1 August 1982 Sergeant Daws and Detective Maxwell questioned Freitas who admitted his involvement in the murder and implicated defendant.

In substance, Johnson Freitas testified at trial that at about 11:45 p.m. on 28 July 1982, defendant came to his house and told him that they could have sex with Mrs. Valenzuela if they went to her residence. They proceeded to the Valenzuela home and while Freitas stood under a street light, defendant cut the screen out of the front door. Upon defendant's signal, Freitas went to the front door where he heard someone being hit. Shortly thereafter he entered the house where he observed defendant on Mrs. Valenzuela's bed. Defendant was sitting on Mrs. Valenzuela, holding her throat and stabbing her. Defendant told the witness to help and he complied by twisting the victim's neck. When defendant broke the knife he was using, Freitas obtained another knife from the kitchen which was also broken. Upon defendant's instruction, Freitas then brought a large twelve-inch knife from the kitchen which defendant again used to cut and stab the victim. The witness then ran from the house and was followed by defendant who was carrying a lady's pocketbook and a bloody knife. They hid the contents of the pocketbook and threw the pocketbook into the woods. Later they returned to the Valenzuela residence where they obtained the knives and wiped the fingerprints from them.

Freitas testified that he was questioned by police officers on 1 August 1982 and that he voluntarily made a statement consistent with his trial testimony. He also led the officers to the place where he and defendant had disposed of the various things taken from the Valenzuela home.

Police officers arrested defendant on 2 August 1982, at which time defendant made an inculpatory statement. We will state further facts concerning defendant's arrest and the circumstances under which he made his confession in the body of this opinion.

Defendant offered no evidence.

The jury returned verdicts of guilty of first-degree murder and misdemeanor breaking or entering.

At the sentencing hearing, the jury was unable to agree as to its sentence recommendation on the verdict of murder in the first degree and the trial judge imposed a sentence of life imprison-

ment pursuant to G.S. 15A-2000(b). On the verdict of guilty of misdemeanor breaking or entering, the trial judge imposed a sentence of not less than two years nor more than two years.

Defendant appealed the life sentence directly to this Court pursuant to G.S. 7A-27(a). We allowed defendant's motion to bypass the Court of Appeals as to the misdemeanor verdict on 13 January 1983.

*Rufus L. Edmisten, Attorney General, by J. Michael Carpenter, Administrative Deputy Attorney General, and Daniel C. Higgins, Assistant Attorney General, for the State.*

*Mary Ann Tally and John G. Britt, Jr., for defendant-appellant.*

BRANCH, Chief Justice.

[1]  Defendant assigns as error the denial of his motion to suppress a custodial inculpatory statement made to police officers.

Defense counsel filed a motion to suppress on 3 December 1982 alleging that the challenged incriminatory statement was obtained from him in violation of his fifth amendment right to be free from self-incrimination and that its exclusion was required by the fourth amendment constitutional guarantee against unreasonable searches and seizures. An affidavit in support of this motion was filed on the same day. On 27 January 1983, Judge E. Lynn Johnson permitted defendant to amend his motion by adding as grounds for suppression that the incriminating statement was taken from him in violation of his right to counsel as guaranteed by the sixth amendment.

We note that defendant does not contend that the officers failed to properly warn him of his *Miranda* rights at each interrogation. Neither does he deny that he affirmatively waived these rights orally and by affixing his signature to the several written waivers. It is his position that after he had initially waived his rights, he was informed for the first time that he was being held for a homicide and at that time, by requesting an attorney, he invoked his right to remain silent. Although questioning then ceased, defendant contends that Officer Matthews reinitiated further interrogation regarding defendant's involvement in the crimes charged and thereby violated his constitutional rights.

We will therefore limit our consideration of the voir dire evidence to the questions of (1) whether defendant initiated the conversation with Officer Matthews which resulted in the inculpatory statement, and (2) if he did initiate the discussion with Officer Matthews, whether defendant knowingly and intelligently waived his previously invoked right to counsel.

In the recent case of *State v. Lang*, 309 N.C. 512, 308 S.E. 2d 317 (1983), Justice Mitchell, writing for a unanimous court, exhaustively reviewed the principles of law pertinent to decision of this assignment of error. We quote from that decision:

> In *Edwards v. Arizona*, 451 U.S. 477, *reh'g denied*, 452 U.S. 973 (1981), the Supreme Court of the United States held
>
>> that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication*, exchanges, or conversations with the police.
>
> 451 U.S. 484-485 (emphasis added). The Supreme Court has more recently stated that this statement in *Edwards* established "in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in *Edwards* was." *Oregon v. Bradshaw*, --- U.S. ---, ---, 103 S.Ct. 2830, 2834, 77 L.Ed. 2d 405, 411 (Plurality opinion) (1983). Thus, the holdings in *Edwards* and *Bradshaw* make it crucial that there be a finding of fact as to who initiated the communication between the defendant and the officers which resulted in his inculpatory statement while in custody and after he had invoked the right to have counsel present during interrogation.
>
> Even if the communication leading to the confession was initiated by the defendant, however, the inquiry and need for

findings of fact does not end. "[T]he burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Oregon v. Bradshaw,* --- U.S. at ---, 103 S.Ct. at 2834, 77 L.Ed. 2d at 412. This was made clear in the following footnote to the *Edwards* opinion:

> If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be "interrogation." In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, *whether* the purported waiver was knowing and intelligent and *found to be so* under the *totality of the circumstances, including* the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

451 U.S. at 486 n. 9 (emphasis added). Therefore, in cases such as this in which the defendant was subjected to custodial interrogation in the absence of counsel after invoking his right to have counsel present during interrogation, the inquiry may not end with a finding that the defendant initiated the later dialogue between himself and the police. The judge presiding must go further and make findings and conclusions establishing whether the defendant validly waived the right to counsel and to silence under the totality of the circumstances, including the circumstance that the accused reopened the dialogue with the authorities. If the presiding judge finds that the accused did not initiate the further dialogue with the authorities, however, the prophylactic rule applies and the confession must be excluded without reaching a consideration of the totality of the circumstances. *Oregon v. Bradshaw,* --- U.S. ---, 103 S.Ct. 2830, 77 L.Ed. 2d 405 (1983).

The phrase "totality of the circumstances" as used in *Edwards* and *Bradshaw* clearly includes all circumstances material to a determination of whether the defendant engaged in a knowing, intelligent and valid waiver of the right to counsel and the right to silence, including the necessary

fact that the accused reopened the dialogue with the authorities.

309 N.C. at 521-22, 308 S.E. 2d at 321-22.

In instant case, at the voir dire hearing on defendant's motion to suppress, the State offered the testimony of Sergeant Matthews who testified that he had established a friendly relationship with defendant who for sometime had been acting as an informant for the sergeant. The sergeant had successfully interceded in defendant's behalf in several criminal matters.

Sergeant Matthews testified that after defendant had requested an attorney and questioning had ceased, and just before he was carried into the booking room, defendant turned to Matthews and asked if he would come to see him. Sergeant Matthews replied, "Do you want me to?" Defendant said, "Yes." Sergeant Matthews then inquired, "When? In the morning?", and defendant replied, "Yeah."

The following morning the officer went to the jail and requested the assistant jailer, Johnny Tyndall, to ask defendant if he still wanted to talk to him. Tyndall left and came back in a few minutes and said that Mark Jenkins did want to talk to the sergeant. Thereafter, the officer and defendant went to an interview room where the officer again advised defendant of his rights. Shortly thereafter, defendant told Sergeant Matthews that he wanted to talk to him "person to person." The officer then told defendant that anything he said would be recorded and used in court. Defendant thereafter made a statement admitting his role in the commission of the crime. Sergeant Matthews testified that he did nothing by action or threat to coerce defendant into making a statement and that he did not promise defendant anything in return for his statement. The officer admitted on cross-examination that he told defendant, "It was looking bad for him," and that he (Matthews) knew there had to be some reason if he (defendant) did this.

Johnny Tyndall, the assistant jailer, testified in corroboration of Sergeant Matthews' testimony as to the events which occurred at the jail.

Detective Maxwell later took a formal statement from defendant after Sergeant Matthews had talked with him. Maxwell

also testified that he made no promises or threats to induce defendant to make a statement.

Defendant testified on voir dire that after he asked for an attorney, he never indicated to Officer Matthews that he wanted to talk to him and that the jailer never asked him if he wanted to talk to the officer. He further stated that he went to an interview room with Sergeant Matthews where he was given his rights. He admitted signing a waiver form, but testified that Matthews influenced him to make a statement by saying there was a big chance for him to be rehabilitated and that he (Matthews) could help him. Defendant also testified that after talking with Officer Matthews, he talked to Detective Maxwell after again being informed of his rights. He testified that he talked to Detective Maxwell "freely and voluntarily." He further testified that he was seventeen years old at the time of his arrest. He was given the right to make a phone call and used it to call his girl friend.

At the conclusion of the voir dire evidence, Judge Johnson found, inter alia, the following facts:

5. That at 11:27 p.m. the defendant was read the warrants by Detective Maxwell, and at 11:31 p.m. the defendant was read his Miranda rights by Detective Daws, which rights appear on State's Exhibit A Voir Dire which is attached to this order, incorporated herein by reference; and the Court finding that the defendant acknowledged his understanding of each right by responding "yes" and affixing his signature to that document; and that he affirmatively waived those rights by responding "yes" and affixing his signature to the document.

6. That the defendant at 11:35 p.m. invoked his right to remain silent and to have counsel and advised the detectives that he desired to consult with Attorney Carter; and that the detectives immediately ceased interviewing the defendant.

7. *That thereafter in the Booking Room, the defendant turned to Detective Matthews and asked him to come see him in the morning.*

This constitutes DEFENDANT'S EXCEPTION NO. 1.

8. *That the following morning, Detective Matthews went to the jail in response to the defendant's request, but asked Sergeant Tyndall, a jailer, to check with the defendant as to whether the defendant still desired to talk to Detective Matthews, and the response was affirmative.*

This constitutes DEFENDANT'S EXCEPTION NO. 2.

9. That thereafter Detective Matthews met the defendant in an interview room in the jail and advised the defendant of his Miranda rights, which the defendant acknowledged that he understood by affixing his signature to that document which has been marked State's Exhibit E Voir Dire, a copy of which is attached to this order and incorporated herein by reference, and thereafter affirmatively waived each of his rights by affixing his signature to the same document; and the Court finding the specific rights and waiver to be as set forth on State's Exhibit E Voir Dire.

10. That the defendant thereafter gave Detective Matthews a statement.

11. That subsequently Detective Maxwell was advised of the statement given by the defendant to Detective Matthews.

12. That thereafter the defendant was taken to the Detective Division and again advised of his Miranda rights by Detective Maxwell, those rights appearing on State's Exhibit B Voir Dire, a copy of which is attached hereto and incorporated herein by reference, and defendant acknowledged each right by affixing his signature thereto and affirmatively waiving those rights by affixing his signature thereto; and the Court finding the rights and waiver to be as reflected on State's Exhibit B Voir Dire.

13. *That thereafter the defendant voluntarily gave a statement to Detective Maxwell and thereafter voluntarily accompanied detectives to recover evidence; and that both were done without coercion, promise or threat.*

This constitutes DEFENDANT'S EXCEPTION NO. 3.

Based on these findings, Judge Johnson concluded:

1. *That the defendant's privilege against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States as made applicable to the States by the Due Process Clause of the Fourteenth Amendment and by Article 1, Section 23, of the Constitution of North Carolina was not violated. And that the defendant's rights in respect to his Sixth Amendment rights in respect to right to counsel in the Constitution of the United States as made applicable to the States by the Due Process Clause of the Fourteenth Amendment were not violated.*

This constitutes DEFENDANT'S EXCEPTION NO. 4.

Judge Johnson thereupon denied defendant's motion to suppress.

There was ample evidence before Judge Johnson to support his findings. He resolved the conflicts in the evidence against defendant and we are bound by his findings. See *State v. Barnett,* 307 N.C. 608, 300 S.E. 2d 340 (1983); *State v. Chamberlain,* 307 N.C. 130, 297 S.E. 2d 540 (1982). These findings of fact in turn support the conclusions of law that defendant's constitutional rights were not violated.

[2] Finally, by this assignment of error, defendant for the first time on appeal contends that since he was only seventeen years old at the time he was arrested and made the inculpatory statement, he was interrogated in violation of G.S. 7A-595(a). This statute, in essence, provides that before conducting an in-custody interrogation of a juvenile, police officers must in addition to the *Miranda* warnings advise the juvenile that he may have his parent, guardian, or custodian present during the interrogation.

Defendant relies upon *State v. Fincher,* 309 N.C. 1, 305 S.E. 2d 685 (1983). There we interpreted the term "juvenile" as used in G.S. 7A-595(a) to include any person not yet eighteen years old or emancipated. In *Fincher,* we found error in the failure to warn the seventeen-year-old defendant of his rights under the statute.

We conclude, however, that in instant case, defendant is not entitled to rely upon *Fincher* to support his argument that the trial judge erred in denying his motion to suppress. This is so because the failure to warn in accordance with the statute was not raised in the motion to suppress and was not argued in the

trial court. Defendant may not, therefore, raise this issue for the first time on appeal.

When there is a motion to suppress or objection to a confession is made, counsel must specifically advise the court before a reception of voir dire evidence as to the basis for his objection or motion to suppress. *State v. Ricks,* 308 N.C. 522, 302 S.E. 2d 770 (1983); *State v. Hunter,* 305 N.C. 106, 286 S.E. 2d 535 (1982). We are of the opinion that defendant has waived the statutory privileges granted by G.S. 7A-595(a).

For the reasons stated, we hold that the trial judge properly denied defendant's motion to suppress.

[3] Defendant next contends that the trial judge erred by permitting the State to "death qualify" the jury prior to the guilt phase of the trial. He argues that permitting challenges for cause of jurors who would be unwilling to impose the death penalty denied him a fair determination of his guilt or innocence by a jury constituting a representative cross-section of the community.

This Court has consistently rejected this argument. *State v. Adcock,* 310 N.C. 1, 310 S.E. 2d 587 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E. 2d 170 (1983); *State v. Kirkley,* 308 N.C. 196, 302 S.E. 2d 144 (1983); *State v. Avery,* 299 N.C. 126, 261 S.E. 2d 803 (1980). We do not elect to overrule these well-reasoned cases. This assignment of error is overruled.

[4] Defendant assigns as error the trial judge's action in overruling his objection to the State's use of peremptory challenges to excuse certain black veniremen.

The nature of a peremptory challenge is that it is exercised without a stated reason and without being subject to the control of the court. *Swain v. Alabama,* 380 U.S. 202 (1965); *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977).

There is no evidence in this record that prospective jurors were peremptorily challenged by the State on the basis of race. The State was exercising a statutory right granted to both the State and defendant by G.S. 15A-1217 when it exercised its peremptory challenges. We find no merit in this assignment of error.

Defendant's motions for a new trial and to set aside the verdicts appear to be formal and addressed to the trial judge's discretion. Such motions are not reviewable on appeal in the absence of abuse of discretion on the part of the trial judge and defendant has here failed to show abuse of discretion. *State v. Hamm*, 299 N.C. 519, 263 S.E. 2d 556 (1980).

Our careful examination of this record discloses no prejudicial error. The verdicts returned and the judgments imposed will not be disturbed.

No error.