STATE OF NORTH CAROLINA v. WILLARD DEAN NATIONS

No. 448A86

(Filed 7 April 1987)

1. **Criminal Law § 75.13— interview of defendant—social services worker—not agent of police**

    The evidence supported the trial court's determination that a department of social services worker who interviewed defendant after his right to counsel attached and he had asserted his right to counsel was not an agent of the police and that his interview of defendant did not amount to interrogation prohibited by *Michigan v. Jackson*, 475 U.S. 625, 89 L.Ed. 2d 631 (1986).

2. **Criminal Law § 75.4— assertion of right to counsel—initiation of contact with police—subsequent confession**

    The trial court could properly find that, after defendant had asserted his right to counsel, defendant initiated contacts with a social worker and a police officer which ultimately resulted in a voluntary confession where the court heard testimony that defendant expressed to a volunteer jailer a desire to confess; the jailer allowed a department of social services worker to interview defendant in connection with an unrelated charge; and defendant repeatedly expressed his desire to confess and clear his conscience.

**3. Criminal Law § 76.8— right to counsel—failure to find waiver "intelligently" made**

The standard of the validity of a sixth amendment waiver of the right to counsel is that it be voluntarily, knowingly and intelligently made. However, failure of the trial court to find that defendant "intelligently" waived his right to counsel did not invalidate the waiver where the court had before it competent evidence from which it could find that defendant "intelligently" waived this right.

**4. Rape and Allied Offenses § 2— first degree sexual offense statute—no partial repeal by another statute**

The first degree sexual offense statute, N.C.G.S. § 14-27.4, was not partially repealed by the enactment as part of the same legislative act of the substitute parent sexual offense statute, N.C.G.S. § 14-27.7. Furthermore, there was no merit to defendant's contention that the district attorney arbitrarily chose to prosecute him under § 14-27.4 rather than under § 14-27.7.

BEFORE *Kirby, J.*, at the 24 February 1986 Criminal Session of Superior Court, RUTHERFORD County, defendant was convicted of first-degree sexual offense and received the mandatory life sentence. Defendant appeals as a matter of right pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court 9 February 1987.

*Lacy H. Thornburg, Attorney General, by Victor H. E. Morgan, Assistant Attorney General, for the State.*

*Hugh J. Franklin for defendant-appellant.*

MEYER, Justice.

The primary issue presented is whether the trial court erred in denying defendant's motion to suppress his confession that was admitted into evidence during his trial for first-degree sexual offense against an eight-year-old boy. In an opinion in a related case, *State v. Nations*, 319 N.C. 329, 354 S.E. 2d 516 (1987) ("*Nations II*"; filed concurrently with this opinion), we address the admissibility of that confession in defendant's trial for first-degree sexual offense against a ten-year-old female.

Defendant also contends that the trial court erred in denying his motion to dismiss the indictment charging first-degree sexual offense under N.C.G.S. § 14-27.4, because that statute had been partially repealed by another statute.

For the reasons set forth below, we find no error.

On 25 September 1985, Detective Mike Wallace of the Rutherford County Sheriff's Department contacted defendant in connection with a report of child sexual abuse in Rutherford County. The defendant voluntarily went to the Rutherford County Jail. Prior to interviewing the defendant, Wallace advised him that he was investigating a child sex abuse case. Wallace told the defendant that he had previously interviewed a male victim and the victim's mother. Wallace also advised defendant of his *Miranda* rights. Defendant signed a waiver of these rights.

Shortly after the beginning of the interview, defendant asserted his right to the assistance of counsel. At that point, Wallace ceased talking with defendant and left the interview room. While defendant was still in the interview room, Wallace arrested him on a warrant charging that defendant had engaged in a sex offense with an eight-year-old male victim. Defendant was placed in the Rutherford County Jail.

On the evening of 5 October 1985, while in the Rutherford County Jail, defendant confessed to the offense for which he was charged. He also confessed to acts constituting sexual offense against a ten-year-old female child, for which he was subsequently indicted and convicted.

During a hearing on defendant's pretrial motion to suppress the confession, the trial court heard testimony from the defendant; Bob Hensley, of the Rutherford County Department of Social Services; Lieutenant David Petty, of the Rutherford County Sheriff's Department; Michael Wallace, of the Rutherford County Sheriff's Department; and Gerald Toney, a volunteer jailer on duty the evening defendant confessed to various illegal sexual acts with both children.

The testimony revealed that defendant was arrested on 25 September 1985, based upon a warrant charging first-degree sexual offense, in that he had engaged in a sexual offense with an eight-year-old male child. On 27 September 1985, a first appearance was held before a district court judge, at which time the court appointed counsel to represent defendant.

Approximately eight days later, on the evening of 5 October 1985, defendant remained in the Rutherford County Jail. That evening, he spoke with a volunteer jailer, Gerald Toney, and

stated that he was upset and wanted to talk with someone from "mental health." As Toney went to inform the jailer that defendant wanted to speak with someone, Bob Hensley, Supervisor of Protective Services with the Rutherford County Department of Social Services, was entering the jail. Hensley's visit to the jail was prompted by a telephone call he had received earlier that evening. A woman had informed him that defendant had sexually molested her daughter and that defendant was being held in the Rutherford County Jail. She further informed Hensley that there was a "possibility that he [defendant] would be released" that evening.

Gerald Toney told Hensley that defendant wanted to speak with someone from the mental health center. Toney then informed defendant that Hensley was there and mistakenly identified Hensley as someone from "mental health."

At the motion hearing in February 1986, Hensley testified as follows concerning his meeting with defendant:

A. Mr. Nations and I talked privately in the lawyers booth at the jail. Mr. Nations asked me if my — if his conversation with me would be confidential. I explained to him that I could not assure that, that my job was to protect children and that that would be my first priority and that by General Statute, whenever I learned that there had been a commission of a crime that I had an obligation to report that to the District Attorney. Mr. Nations — I do want to back up a minute though. Mr. Nations did ask me when I first met with him was I from mental health and I told him no, that I was not, that I was from Social Services. Then after we went through the other, I explained to him that I had received a call from Sandra . . . and that she had told me that it was her understanding that her oldest daughter . . . had been sexually molested by him. Mr. Nations then went on to tell me that indeed this had happened, that since Sandra and the other child . . . were three or four years of age he had had oral sex with them on a regular basis for six or seven years. Also during this time, he did talk about . . . [this] situation and told me that the statements made by the . . . boy were also true.

Hensley also testified to the sequence of events that led to defendant's giving a statement containing his confession to law enforcement officials:

A. Okay, he was upset and I asked him—I said, "[]Is there someone that I can call that you would like to talk with—a minister, a relative, or someone like that," and he said there was no one in the world that he knew he could talk with. And I said, well—I said, "You've told me some pretty serious stuff." I said, "Would you be willing to tell one of the officers this," and he said yes, he would, and it was at that point that I left the officer's cell and went and asked if someone could contact Mr. Petty to come down to the jail.

Q. So that's how Petty was sent for?

A. That's right.

Q. It sprung from the defendant's request?

A. Well, I asked him would he be willing to talk with an officer.

Q. Did anybody put you up to saying that, Mr. Hensley? Were you acting on behalf of any officer?

A. No, I was—Mr. Nations had told me that he felt better by getting this off his conscience by telling it.

Lieutenant Petty, of the Rutherford County Sheriff's Department, testified that on the evening of 5 October 1985 he was on call. The dispatcher at the jail called Petty and informed him that defendant wanted to speak with an officer. Petty then went to the jail, where defendant was speaking with Hensley, and asked defendant if he wanted to talk to him. When defendant responded affirmatively, Petty escorted him to his office and advised him of his *Miranda* rights. Defendant then signed a waiver of his *Miranda* rights. With defendant's consent, Petty then recorded defendant's statement in which he confessed to sexual acts for which he was being held, as well as to uncharged acts against a minor female.

After the confession was recorded, defendant was taken to another room. There, he began crying and beating his head against the door, and officials at the jail originated a petition to

have him committed to Broughton Hospital. (The transcript of the district attorney's examination of Officer Petty at the trial of *Nations II* indicates that this petition was subsequently dismissed.)

Having heard the testimony presented at the hearing on the motion to suppress, Judge James M. Long entered twenty-seven findings of fact. Significantly, he found that defendant initiated contacts with both Hensley and Lieutenant Petty on the evening of 5 October 1985; that defendant voluntarily made the incriminating statements to clear his conscience; that the visit by Bob Hensley to the defendant was not at the direction of any law enforcement agency charged with enforcement of criminal statutes; that Bob Hensley's visit to the defendant was not made for the purpose of obtaining information with which to initiate criminal proceedings against the defendant; and that at the time of the confession defendant was not suffering from any mental disorder that would impair his ability to evaluate his rights and liabilities in his situation.

Based on his findings of fact, Judge Long concluded as a matter of law that Bob Hensley was not an agent of the police or any other law enforcement agency and did not question defendant for the purpose of eliciting statements which could be used for criminal prosecution. Applying a "totality of the circumstances" test, Judge Long further concluded that the State carried its burden in showing that the contacts with Hensley and Petty which resulted in the confession were voluntarily initiated by the defendant and that the confession was not the product of custodial interrogation. Finally, the court concluded that defendant "understandingly and knowingly waived his right against self-incrimination and earlier invoked right to counsel."

At defendant's trial upon an indictment, proper in form, charging first-degree sexual offense against an eight-year-old male child, the State offered into evidence defendant's tape-recorded confession made on the evening of 5 October 1985.

## I.

Defendant argues that his confession was obtained in violation of his sixth amendment right to the assistance of counsel.

The sixth amendment, applicable to the states through the fourteenth amendment, *Gideon v. Wainwright,* 372 U.S. 335, 9

L.Ed. 2d 799 (1963), guarantees that in all criminal prosecutions an accused shall enjoy the right "to have assistance of counsel for his defense." U.S. Const. amend. VI. This sixth amendment right attaches at the initiation of adversary judicial criminal proceedings. *Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed. 2d 411 (1972). Once the sixth amendment right has attached, the police may not "interrogate" the defendant unless counsel is present or the defendant has expressly waived his right to assistance of counsel. *Brewer v. Williams,* 430 U.S. 387, 51 L.Ed. 2d 424 (1977). Likewise, police may not *initiate* interrogation of a defendant whose sixth amendment right has attached. *Michigan v. Jackson,* 475 U.S. 625, 89 L.Ed. 2d 631 (1986).

"Interrogation," as that term is used in sixth amendment cases, refers to conduct of law enforcement which is "deliberately and designedly" set out to elicit incriminating information. *Brewer,* 430 U.S. at 399, 51 L.Ed. 2d at 437. It has been suggested that once the sixth amendment right to assistance of counsel attaches,

> the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation. Thus, the surreptitious employment of a cellmate, see *United States v. Henry,* 447 U.S. 264, 65 L.Ed. 2d 115, 100 S.Ct. 2183 (1980), or the electronic surveillance of conversations with third parties, see *Maine v. Moulton, supra* [474 U.S. 159, 88 L.Ed. 2d 481 (1986)]; *Massiah v. United States,* 377 U.S. 201, 12 L.Ed. 2d 246, 84 S.Ct. 1199 (1964), may violate the defendant's Sixth Amendment right to counsel even though the same methods of investigation might have been permissible before arraignment or indictment.

*Michigan v. Jackson,* 475 U.S. 625, 632, 89 L.Ed. 2d 631, 640 (footnote omitted).

Applying these principles to the present case, it is clear that defendant's right to counsel attached at his first appearance before a judge of the district court, on 27 September 1985, at which time counsel was appointed to represent him.

[1] Defendant contends that Hensley acted as an agent of the State, and thus his questioning of defendant amounted to pro-

hibited interrogation under *Jackson.* Defendant relies on *New Jersey v. T.L.O.*, 469 U.S. 325, 83 L.Ed. 2d 720 (1985), in which the Supreme Court held that public school officials are state actors for purposes of the fourth amendment protections against warrantless searches.

*T.L.O.* is inapplicable to the facts of the present case in which the fourth amendment right is not involved. Moreover, based on the facts adduced at the hearing, the trial court found:

13. That Bob Hensley was not a sworn law enforcement officer, and he did not have any type of arrest power or jurisdiction, and was not affiliated in any way with any law enforcement agency.

14. That the visit of Bob Hensley to the jail seeking information in regard to defendant was made in performance of his statutory duties to protect and safeguard the welfare of children under his or his agency's care, custody or protection.

15. That the visit of Bob Hensley was *not* at the direction of any law enforcement agency, officer, or other agency of the State of North Carolina charged with enforcement of criminal statutes, and was not made wholly or in part for the purpose of obtaining information with which to initiate further criminal proceedings against the defendant Willard Nations.

Findings of fact concerning the admissibility of a confession are conclusive and binding if supported by competent evidence. *State v. Simpson*, 314 N.C. 359, 368, 334 S.E. 2d 53, 59 (1985). This is true even though the evidence is conflicting. *Id.; State v. Williams*, 319 N.C. 73, 352 S.E. 2d 428 (1987). Because this finding was supported by competent evidence, which supports the court's conclusion that Hensley was not an agent of the police, we reject defendant's contention that Bob Hensley's interview of defendant amounted to interrogation prohibited by *Jackson.* As this Court recently noted in *State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673 (1987), "Our appellate court decisions are replete with examples of individuals who, though occupying some official capacity or ostensible position of authority, have been ruled unconnected to law enforcement for . . . purposes [of interrogation]." *Id.* at 43, 352 S.E. 2d at 679.

It is, of course, well settled that interrogation does not result merely from a defendant's initiation of contact with law enforcement officials. *See State v. Todd,* 310 N.C. 110, 326 S.E. 2d 249 (1985) (statement by defendant volunteered, not product of interrogation); *United States v. Bailey,* 728 F. 2d 967 (7th Cir.), *cert. denied,* 467 U.S. 1229, 81 L.Ed. 2d 881 (1984) (not error to admit confession made to an agent of the Drug Enforcement Agency while defendant in custody). Unless the conduct of the police is deliberate and designed to elicit an incriminating statement, there is no interrogation for sixth amendment purposes. *Brewer v. Williams,* 430 U.S. 387, 399, 51 L.Ed. 2d 424, 437.

[2] In denying the motion to suppress, the trial court found:

11. That the defendant *initiated* the contacts with both Hensley and officer Petty and his incriminating statements to them were made of his own volition and not as the result of any *interrogation.* The statements to Hensley and Petty were not the result of any threats, promises, or coercion, but were voluntarily made by the defendant to confess his wrongs and to clear his conscience.

(Emphasis added.)

Our review of the record indicates that this finding was supported by competent evidence. The trial court heard testimony that defendant expressed to the volunteer jailer a desire to confess. The jailer allowed a department of social services worker to interview defendant in connection with an unrelated charge. Defendant repeatedly expressed his desire to confess and clear his conscience. Based on these facts, the trial court could properly find that defendant initiated the contacts with Hensley and Petty which ultimately resulted in a voluntary confession, knowingly and intelligently made.

[3] Finally, defendant contends that the trial court erred in finding that he waived his sixth amendment right to counsel. The standard for the validity of a sixth amendment waiver is that it be voluntarily, knowingly, and intelligently made. *Faretta v. California,* 422 U.S. 806, 45 L.Ed. 2d 562 (1975); *Michigan v. Jackson,* 475 U.S. 625, 89 L.Ed. 2d 631; *State v. Reese,* 319 N.C. 110, 353 S.E. 2d 352 (1987). Defendant argues that the trial court's order fails to state that defendant *intelligently waived his right*

*to counsel. The trial court found and concluded that defendant "freely, understandingly* and knowingly" (emphasis added) waived his right against self-incrimination and right to counsel.

It is noteworthy that in finding that the defendant "understandingly" waived his right to counsel, the trial court employed the language frequently used by this Court in evaluating the validity of a defendant's waiver of the right to the presence of counsel. *See State v. Harris*, 315 N.C. 556, 571, 340 S.E. 2d 383, 392 (1986) ("trial court properly found that defendant's confession was made freely, voluntarily and *understandingly*"); *State v. Simpson*, 314 N.C. 359, 369, 334 S.E. 2d 53, 60 (evidence supported finding that confession was "freely, voluntarily, and understandingly made"). To hold that the validity of a waiver rests on the trial judge's use of a magic word, "intelligently," is to overlook the substantive principles by which courts are guided in determining whether waivers are valid.

The trial court had before it competent evidence from which it could find that defendant "intelligently" waived his right to counsel. After giving his statement, defendant coherently responded to questions designed to clarify the contents of the statement. There was also evidence that defendant's post-confession behavior was erratic and that he was committed to Broughton Hospital shortly after he confessed. The court found as fact:

18. That although there is evidence that the personnel of the Rutherford County Jail had some questions and concerns about the mental well-being of the defendant on this occasion, there is no credible evidence of any sort before this Court to indicate that the defendant was suffering from any mental disorder or disease such as would impair his ability to evaluate his rights and liabilities in his situation, nor such as would in any way render him incapable of voluntarily waiving any or all rights in regard to making a statment [sic] to law enforcement officers or constituting any type of duress such as would invalidate any waiver of rights.

We have reviewed the testimony presented at the hearing on the motion to suppress. We find that the trial court's conclusions are supported by appropriate findings of fact, which in turn are supported by ample competent evidence.

## II.

[4] Defendant argues that the indictment under N.C.G.S. § 14-27.4 should have been dismissed because that statute has been partially repealed by N.C.G.S. § 14-27.7.

N.C.G.S. § 14-27.4, "First-degree sexual offense," defines the elements of first-degree sexual offense, which is a Class B felony:

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim; or

(2) With another person by force and against the will of the other person, and:

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or

b. Inflicts serious personal injury upon the victim or another person; or

c. The person commits the offense aided and abetted by one or more other persons.

N.C.G.S. § 14-27.4(a) (1986).

N.C.G.S. § 14-27.7, "Intercourse and sexual offenses with certain victims; consent no defense," provides:

If a defendant who has assumed the position of a parent in the home of a minor victim engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home, or if a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class G felony. Consent is not a defense to a charge under this section.

N.C.G.S. § 14-27.7 (1986).

Defendant acknowledges that the two statutes were enacted as parts of the same legislative act. 1979 N.C. Sess. Laws ch. 682. We cannot attribute to the General Assembly an intent to simultaneously enact and repeal a law.

Secondly, defendant argues that if N.C.G.S. § 14-27.7 does not repeal § 14-27.4, then different persons committing the same act would be subjected to different forms of punishment, depending on whether they are indicted under § 14-27.4 (a Class B felony) or § 14-27.7 (a Class G felony). Of course, a parent or custodial parent would not be subject to N.C.G.S. § 14-27.4 unless the victim were under a certain age or defendant used force or violence against the minor victim. Absent evidence to the contrary, we decline to adopt defendant's argument that prosecutors arbitrarily choose to prosecute under one provision rather than another.

For the reasons stated herein, we find

No error.