STATE OF NORTH CAROLINA v. ELLEN JONES ROBEY AND RICHARD DALE BARNES

No. 8719SC323

(Filed 6 September 1988)

1. **Criminal Law § 75.4— assertion of right to counsel—subsequent police-initiated interrogation—denial of right to counsel**
     Defendant's March 20 statement and March 21 confession in the absence of counsel were both products of police-initiated interrogations after defendant had asserted her right to counsel and thus were obtained in violation of her constitutional right to counsel where counsel was appointed March 4 to represent defendant on a charge of accessory after the fact to murder; the sole meeting directly initiated by defendant occurred on March 6 when defendant summoned an officer to her cell and gave him a previously handwritten statement reiterating her prior statements corroborating a confession by the victim's stepson; the police interrogated defendant in Randolph County on March 20 because the victim's stepson had recanted his confession and stated that defendant committed the murder, and defendant made certain incriminating statements; defendant was again interrogated on March 21 after being given a polygraph examination and confessed to the murder; and defendant's counsel was not present during the March 20 and 21 interrogations or notified that they would occur.

**2. Criminal Law § 11— new trial for principal—new trial for accessory after the fact also required**

A defendant convicted of accessory after the fact to second degree murder is entitled to a new trial on that charge because the appellate court granted a new trial to the principal on the ground that the principal's in-custody statements were erroneously admitted where defendant and the principal were tried jointly, and the State used the same evidence to prove the principal's commission of the murder as an element of the charges against both the principal and the accessory.

**3. Criminal Law § 92.2— armed robbery and accessory—two defendants—joinable offenses**

The statement in *State v. Cox*, 37 N.C. App. 356, that armed robbery and accessory charges were "mutually exclusive" and thus not joinable has no application where two different defendants have been charged as principal felon and accessory after the fact.

Judge PHILLIPS concurs in the result.

APPEAL by defendants from *Allsbrook (Richard B.), Judge.* Judgment entered 16 July 1986 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 25 September 1987.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Steven F. Bryant, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Geoffrey C. Mangum, for defendant-appellant Ellen Jones Robey.*

*Mary K. Nicholson for defendant-appellant Richard Dale Barnes.*

GREENE, Judge.

This appeal arises from the joint trial and conviction of Ellen Robey for second-degree murder and Richard Barnes as her accessory-after-the-fact. The evidence tended to show that Thomas Robey was murdered on Christmas Eve, 1984. Based upon a confession by the victim's stepson, Michael Perdue, Perdue was originally charged with Robey's murder while Ms. Robey and Barnes were charged with being accessories-after-the-fact for allegedly helping to conceal the victim's body. Prior to the appointment of counsel, Ms. Robey made statements to police which corroborated Perdue's confession.

Counsel was appointed for Robey on 4 March 1985. On 6 March 1985, Robey summoned a police officer to her cell and turned over a handwritten statement which reiterated her previous statements corroborating Perdue's confession. After reading Robey her *Miranda* rights, the officer accepted the written statement and the meeting ended. However, two weeks later Perdue recanted his original confession and instead made statements incriminating Robey as the murderer and characterizing himself as only an accessory-after-the-fact. The police returned to Robey's cell on March 20th, secured a waiver of her *Miranda* rights and interrogated her for almost four hours. While she continued to deny her culpability for the murder of Thomas Robey, she did make certain other incriminating statements during the interrogation on March 20th. On March 21st, she was taken to Greensboro for a polygraph examination. After continued questioning during the examination, Ms. Robey confessed to the murder of Thomas Robey.

Asserting Robey's constitutional right to remain silent and right to counsel had been violated, Robey's counsel moved to suppress the statements made on March 20th and March 21st. Based upon the testimony at the suppression hearing, the trial court concluded that Robey's incriminating statements at the Randolph County Jail on 20 March 1985 (the "March 20th statement") and at the Greensboro Police Department on 21 March 1985 (the "March 21st statement" or "confession") were both "made freely, voluntarily and intelligently." The court furthermore concluded Robey made the statements to police after a knowing and intelligent waiver of her right to remain silent and right to counsel. These conclusions were based in part on the following findings:

> 2. . . . that on [4 March 1985] Charles T. Browne was appointed to represent the defendant and the defendant was aware of that fact.
>
> 3. That thereafter on March 6, 1985, the defendant sent for Lieutenant Charles Ratcliffe of the Randolph County Sheriff's Department and advised that she wanted to talk with him; prior to doing so, Lieutenant Ratcliffe read to defendant her constitutional rights from a card that he held with him; and that she then handed to him a five-page statement written by her . . .

4. That defendant Robey thereafter gave a statement on March 20, 1985 at the Randolph County Jail . . . and then gave another statement the following date on March 21, 1985 at the Greensboro Police Department.

5. That Attorney Browne was not present when either the [March 20 statement] or [March 21 confession] were [sic] taken, nor was he notified that the defendant was going to be interviewed on either of those occasions . . .

6. That although not considered necessary because of the findings of fact the court further finds that after Attorney Browne was appointed on March 4, 1985, which was known to the defendant on March 6, 1985, she sent word to Lieutenant Ratcliffe that she wanted to see him as set forth above, gave him a statement that she already had written out, *and therefore she initiated further contact and dialogue with law enforcement officers in Randolph County.* [Emphasis added.]

Robey excepted to these findings at the hearing and now asserts, among other things, that the evidence at the hearing and the court's findings of fact demonstrate her March 20th statement and subsequent confession were both products of police-initiated interrogations which violated Robey's constitutional right to counsel. Barnes also raises numerous assignments of error and contends he is entitled to a new trial if Robey's conviction is reversed.

---

The following issues are presented: I) whether the trial court properly found Robey's March 20th statement and March 21st confession were elicited without violating her Sixth Amendment right to counsel where the sole meeting directly initiated by Robey occurred on March 6 and resulted only in her delivering a previously written exculpatory statement to police; and II) if Robey as principal is granted a new trial of her murder charge, whether her alleged accessory-after-the-fact Barnes is also entitled to a new trial.

I

Robey's Appeal

[1] After hearing evidence at the suppression hearing, the trial court found that Robey requested the appointment of counsel on 4

March 1985 and that the court appointed Charles Browne as Robey's counsel the same day. Once Robey requested counsel, she could not be interrogated by police without violating her federal Sixth Amendment right to counsel unless counsel was present or she subsequently waived the right to counsel previously asserted. *See Patterson v. Illinois*, --- U.S. ---, --- L.Ed. 2d ---, 108 S.Ct. 2389 (1988) (once accused "requests" counsel, post-indictment questioning forbidden unless accused calls for meeting); *Michigan v. Jackson*, 475 U.S. 625, 636, 89 L.Ed. 2d 631, 642, 106 S.Ct. 1404 (1986) (Court invalidated any waiver of counsel if police initiate interrogation after "assertion" of right at arraignment or similar proceeding); *cf. State v. Nations*, 319 N.C. 318, 324, 354 S.E. 2d 510, 513 (1987) (interpreting *Jackson* to bar further police-initiated interrogation once right to counsel "attaches"). The police must honor any limits the accused places on his waiver of counsel. *E.g., Patterson*, --- U.S. at ---, --- L.Ed. 2d at ---, 108 S.Ct. at 2395 n.5 (emphasizing accused's waiver was limited to post-indictment questioning); *Connecticut v. Barrett*, 479 U.S. 523, 93 L.Ed. 2d 920, 928, 107 S.Ct. 828 (1987) (where suspect requested counsel for written statements but agreed to talk to police, police could only use oral statements); *see also Arizona v. Roberson*, 486 U.S. ---, 100 L.Ed. 2d 704, 714-15, 108 S.Ct. 2093 (1988) (contrasting earlier opinions based on whether suspect's waiver was limited).

The State must establish any waiver of counsel by a preponderance of evidence and "[d]oubts must be resolved in favor of protecting the constitutional claim [to counsel]." *Jackson*, 475 U.S. at 633, 89 L.Ed. 2d at 640. In order to prove the accused has voluntarily waived a previous request for counsel, the State must overcome the "presump[tion] that any subsequent waiver that has come *at the authorities' behest and not at the suspect's own instigation* is itself the product of the 'inherently compelling pressures [of custodial interrogation]' and not the voluntary choice of the suspect." *Roberson*, 486 U.S. at ---, 100 L.Ed. 2d at 713 (quoting *Miranda v. Arizona*, 384 U.S. 436, 467, 16 L.Ed. 2d 694, 719, 86 S.Ct. 1602 (1966)) (emphasis added). Thus, in order to show the accused has voluntarily chosen to revoke a previous request for counsel, the State must always show that the accused rather than police "initiated" the "communication, conversations or exchanges" which incriminate the accused. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L.Ed. 2d 378, 386, 101 S.Ct. 1880

State v. Robey

(1981). The "communication, conversations or exchanges" initiated by the accused must be more than "routine incidents of the custodial relationship" and must instead "evince . . . a willingness and a desire for a generalized discussion about the investigation . . . ." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46, 77 L.Ed. 2d 405, 412, 103 S.Ct. 2830 (1983).

In addition, where incriminating statements result from police interrogation after the accused's initiation of such communication, conversations or exchanges, the State must also show under the totality of the circumstances that subsequent events indicated a waiver of the right to have counsel present during the investigation. *Bradshaw*, 462 U.S. at 1044, 77 L.Ed. 2d at 412 ("totality of circumstance" analysis where re-interrogation follows initiation); *see generally State v. Jenkins*, 311 N.C. 194, 199, 317 S.E. 2d 345, 348 (1984). However, if the trial court finds the accused did not initiate any further dialogue with authorities, the prophylactic rule applies and the confession must be excluded without reaching a consideration of the totality of the circumstances. *Jenkins*, 311 N.C. at 199, 317 S.E. 2d at 348.

Robey's brief does not challenge the finding that her written waiver of counsel was knowing and intelligent; instead, she challenges the court's necessary finding that she initiated the contact and dialogue which actually resulted in her incriminating statements on March 20th and 21st. At the outset, we note some ambiguity in the trial court's Finding No. 6 that Robey's March 6 contact with Lieutenant Ratcliffe "therefore . . . initiated further contact and dialogue with law enforcement officers in Randolph County." It is not clear whether this finding only refers to "further contact and dialogue" on March 6 or whether the court intended that it constructively encompass the police interrogations on March 20th and 21st. Furthermore, Finding No. 6 only refers to further contact and dialogue in Randolph County: Robey made her alleged confession to a Greensboro Police Department detective after interrogation in Greensboro, i.e. in Guilford County. Finding No. 6 must be viewed with some caution in any event since the court prefaced it by incorrectly stating the finding was "not necessary." *Cf. Jenkins*, 311 N.C. at 198, 317 S.E. 2d at 348 ("crucial" that the trial court find who initiated communication which results in inculpatory statement).

We recognize the court's findings of fact are conclusive and binding if supported by competent evidence even if the record discloses conflicting evidence. *Nations*, 319 N.C. at 325, 354 S.E. 2d at 514. However, after carefully reviewing the court's findings and the transcript of the suppression hearing, we conclude there was no competent evidence from which the court could have found either Robey's March 20th statement or her March 21st confession were the products of any communication, conversations, exchanges or meetings *she* initiated which would "indicate . . . [she] felt comfortable enough with the pressures of custodial interrogation both to answer questions and to do so without an attorney." *Roberson*, 486 U.S. at ---, 100 L.Ed. 2d at 704.

The *Bradshaw* Court stated the term "initiate" should be used in its "ordinary dictionary sense" and doubted the need to "build . . . superstructures of legal refinements around the word . . . ." 462 U.S. at 1045, 77 L.Ed. 2d at 412. The ordinary dictionary meaning of "initiate" is "to begin or set going: to make a beginning of: to perform or facilitate the first actions or steps of . . . ." *Webster's Third New International Dictionary* at 1164 (1968). Our research has disclosed no case where a defendant's necessary initiation of conversation or meetings which lead to his incrimination has merely been inferred from such a one-sided meeting as occurred between Robey and Lieutenant Ratcliffe two weeks before officers began their interrogation. There was nothing about Robey's summoning Ratcliffe to her cell which indicated the March 6 encounter was just the "beginning" or "first step" of a generalized discussion about the investigation. *Cf. Bradshaw*, 462 U.S. at 1045, 77 L.Ed. 2d at 412 ("well, what is going to happen to me now?" sufficient to show desire for generalized discussion about investigation); *Nations*, 319 N.C. at 326, 354 S.E. 2d at 513 (accused initiated contact by telling jailer he wanted to confess and clear his conscience). In describing how he knew Robey had summoned him, Lieutenant Ratcliffe respectively testified at the suppression hearing and at trial that he merely received a message that Robey "wanted to talk to me" or that he "was wanted at the jail." *Cf. United States v. Zolp*, 659 F. Supp. 692, 719-20 (D.N.J. 1987) (accused telephoned U.S. attorney in order to "set up" a meeting which would "clear up his troubles stemming from the . . . indictment").

State v. Robey

Furthermore, the subsequent brief conversation between Robey and Ratcliffe did not indicate Robey's desire to participate without counsel in a dialogue with police about the investigation. Ratcliffe testified at trial that Robey initially told him she wanted to give him a written statement. Ratcliffe then read her *Miranda* warnings and the meeting terminated upon his receipt of her handwritten document. As the *Barrett* Court noted, authorities may "not ignore the tenor or sense of a defendant's response to [*Miranda*] warnings." *Barrett*, 479 U.S. at ---, 93 L.Ed. 2d at 927. Robey's handwritten statement only reiterated Robey's incrimination of Michael Perdue as the murderer of Thomas Robey. The written statement did not itself invite any response nor did it evidence any inquiry about the investigation. Indeed, the fact Robey wrote out her statement before summoning Ratcliffe suggests her desire *not* to engage in any face-to-face questioning by police; that Lieutenant Ratcliffe withdrew after receiving the document further supports this understanding of the meeting. Nor did anything else about the March 6th encounter suggest Robey's desire that officers return and speak to her at a later time. *Cf. Jenkins*, 311 N.C. at 200, 317 S.E. 2d at 349 (defendant asked police officer to come see him the next day: officer did not commence dialogue next day until assured defendant still wanted to talk to him).

Finding "initiation" based on such vague implications would defeat the "bright-line" prophylactic foundation of the initiation requirement. *See Jenkins*, 311 N.C. at 198, 317 S.E. 2d at 348 (noting "prophylactic" nature of requirement). Robey's initiation of the March 6th meeting, her conduct of that meeting and the statement she turned over to police show at most that she revoked her previous request to "rely on counsel as the 'medium' between [herself] and the State" only for the limited purpose of delivering her previously written exculpatory statement to a police officer. *Maine v. Moulton*, 474 U.S. 159, 176, 88 L.Ed. 2d 481, 496, 106 S.Ct. 477 (1985). Consequently, Robey's March 6th statement was undeniably a "communication" she initiated and was thus admissible.

However, the March 6 statement is not the statement the State sought to introduce at trial: the incriminating statements the State sought to introduce occurred two weeks later and were elicited only after extensive interrogation by police and a polygraph examination outside the presence of counsel. Lieutenant

Ratcliffe testified that he had no contact with Robey during the two weeks before the March 20th interrogation. Officer House of the Randolph County Police Department testified that the police decided to interrogate Robey on March 20th because Michael Perdue had recanted his earlier confession and stated Robey committed the murder: the police thus did not return to question Robey because of any communication or conversations she had initiated but instead returned on their own initiative based on communications by Michael Perdue.

While competent evidence supports the court's finding that Robey initiated "contact" on March 6, there is no evidence to support the court's apparent inference from *that* encounter that Robey desired a subsequent generalized discussion of the investigation without her attorney — much less that she desired to be interrogated and subjected to a polygraph examination two weeks later. *Cf. State v. Jackson*, 308 N.C. 549, 582, 304 S.E. 2d 134, 152 (1983) (legal significance of finding of fact is legal determination reviewable by appellate court). Given the resolution of doubts against waiver of counsel and the clearly limited characteristics of Robey's one-sided encounter with Lieutenant Ratcliffe on March 6, we conclude Robey's statements and conduct during the March 6 encounter did not indicate she "felt comfortable enough with the pressures of custodial interrogation both to answer questions and to do so without an attorney." *Roberson*, 486 U.S. at ---, 100 L.Ed. 2d at 704.

Accordingly, as Robey's incriminating statements were the products of police-initiated interrogation without counsel, we hold the trial court erroneously denied Robey's motion to suppress her March 20th statement and her March 21st confession. The State's case against Robey was primarily based on her confession and the apparently contradictory confessions of Michael Perdue. As the evidence of Robey's guilt other than her own confession was less than "overwhelming," the admission of Robey's incriminating statements was not harmless beyond a reasonable doubt under Section 15A-1443(b). N.C.G.S. Sec. 15A-1443(b) (1983); *see State v. Brown*, 306 N.C. 151, 164, 293 S.E. 2d 569, 578 (1982) (State may overcome presumption that constitutional error is prejudicial by showing other evidence of guilt is "overwhelming"). Therefore, we hold the trial court's failure to exclude Robey's March 20th and 21st statements was prejudicial error entitling her to a new trial.

State v. Robey

II

Barnes's Appeal

[2] As Barnes asserts his conviction under this indictment required the jury to find the guilt of his alleged principal, Ms. Robey, Barnes contends we must grant a new trial of his accessory-after-the-fact charge if we grant a new trial for Robey. Under this particular indictment and under these particular facts, we must agree.

The State's indictment of Barnes specifically charged that Barnes became an accessory-after-the-fact to a felony committed by Robey with the knowledge that Robey had committed the felony. Under Section 14-7, the State thus had to prove three elements: (1) the specified principal (Robey) committed a felony; (2) the alleged accomplice (Barnes) personally aided Robey in her attempt to avoid criminal liability by any means calculated to assist her in doing so; and (3) Barnes gave such help with the knowledge that Robey had committed a felony. N.C.G.S. Sec. 14-7 (1986); *see State v. Fearing*, 304 N.C. 499, 504, 284 S.E. 2d 479, 483 (1981). As the State was permitted to join trial of the two offenses, it accordingly used the same evidence to prove Robey's commission of a felony as an element of both offenses. Although the jury was instructed to consider the evidence separately as to each offense, the trial court also instructed the jury that they must acquit Barnes if they acquitted Robey. *Cf. State v. Austin*, 31 N.C. App. 20, 24, 228 S.E. 2d 507, 510 (1976) (insufficient evidence of crime by named principal requires acquittal of alleged aider and abettor). As we have above held there was prejudicial error in the proof that Robey committed the felony charged, it follows that prejudicial error occurred in the proof of the same essential element of Barnes's charge under Section 14-7. *See State v. Spencer*, 18 N.C. App. 499, 197 S.E. 2d 232 (1973) (where State jointly tried murder principal and aider and abettor, prejudicial error requiring new trial of principal constituted prejudicial error requiring new trial of aider and abettor).

We recognize Section 14-7 permits the indictment and conviction of an accessory-after-the-fact "whether the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice . . ." Sec. 14-7. Thus, Section 14-7 has been held to permit the conviction of an accessory to a felony

committed by an "unknown person" so long as the actions of the "unknown person" are adequately established and despite the failure to identify and convict the true principal. *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973). However, Section 14-7 does not permit the conviction of an accessory-after-the-fact to a felony committed by a named principal if that named principal is acquitted. Likewise, since prejudicial error during the joint trial entitles Robey to a redetermination of her guilt, Barnes must also be re-tried since the same jury necessarily considered the prejudicial evidence of Robey's alleged felony in determining that same element of Barnes's offense. Accordingly, we conclude under these facts that Robey's re-trial mandates the re-trial of Barnes.

[3]  Since we grant Barnes a new trial, we need not address his numerous other assignments of error which may not arise on retrial. However, we do note his erroneous interpretation of our opinion in *State v. Cox*, 37 N.C. App. 356, 246 S.E. 2d 152, *disc. rev. denied*, 295 N.C. 649, 248 S.E. 2d 253 (1978), *cert. denied*, 440 U.S. 930, 59 L.Ed. 2d 487 (1979). In objecting to joinder, Barnes claims his accessory charge was *per se* not joinable with Robey's second-degree murder charge based on our statement in *Cox* that the armed robbery and accessory charges in that case were "mutually exclusive" and therefore not joinable. *Id.* at 361, 246 S.E. 2d at 154. That statement is correct under the facts of *Cox* since the defendant in that case had moved under Section 15A-926(c) to dismiss accessory charges for failure to join them with an armed robbery charge of which he had previously been acquitted. *Cf.* N.C.G.S. Sec. 15A-976(c) (1983) (defendant tried for one offense may move to dismiss charge of joinable offense). We rejected his claim in part because one defendant cannot be charged with both a criminal offense and with being an accessory-after-the-fact to the commission of that same offense. *See generally State v. Rowe*, 81 N.C. App. 469, 471, 344 S.E. 2d 574, 576 (1986). The statement from *Cox* has no application to this case since two different defendants have been charged with two separate offenses.

New trial for both defendants.

Judge COZORT concurs.

Judge PHILLIPS concurs in the result.