STATE OF NORTH CAROLINA v. KENNETH JAMES WIGGINS AND ROBERT
ALPHONSO CARTWRIGHT

No. COA06-1481

(Filed 21 August 2007)

## 1. Constitutional Law— right to confrontation—statements to deputy

There was no Sixth Amendment *Crawford* error in a drug trafficking case where a deputy's testimony included statements made by an informant. The statements were not offered for their truth, but to explain how the investigation unfolded.

## 2. Evidence— statements to deputy—not hearsay

Testimony by a deputy in a drug trafficking prosecution that included statements by an informant was not offered for its truth and was not hearsay.

## 3. Appeal and Error— preservation of issues—no objection at trial

An issue was not preserved for appellate review where there was no objection on that basis at trial.

## 4. Evidence— testimony by deputy—statements by an informant—not unduly prejudicial

The probative value of testimony by a deputy that included statements by an informant was not outweighed by its prejudicial effect and there was no abuse of discretion in its admission. Also, there was no abuse of discretion in the denial of a motion for a mistrial on this basis.

## 5. Drugs— trafficking by possession—sufficiency of evidence

There was sufficient evidence to deny a motion to dismiss a prosecution for trafficking in cocaine by possession where defendant argued that there was no evidence that he actually or constructively possessed the cocaine, but cocaine and digital scales were recovered from his vehicle, and paraphernalia from his hotel room.

## 6. Drugs— trafficking by possession—proximity

A passenger in a truck in which cocaine was found was not simply in close proximity; there were other incriminating circumstances permitting the inference that he had knowledge of the cocaine under the hood.

**7. Drugs— possession with intent to sell—sufficiency of evidence**

There was sufficient evidence to deny defendant's motion to dismiss a charge of possession of cocaine with intent to sell.

**8. Drugs— trafficking by possession—conspiracy—mutual implied understanding**

The evidence in a prosecution for conspiracy to traffic in cocaine by possession was sufficient, taken collectively, to permit an inference of a mutual implied understanding.

**9. Drugs— constructive possession—control of motel room**

There was sufficient evidence that defendant Wiggins constructively possessed an opium derivative even though he contended that he did not have exclusive control of a motel room in which the opium derivative was found.

**10. Jury— comments of prospective juror—not unduly prejudicial**

The comments of a prospective juror in a narcotics prosecution were not so prejudicial as to require a new trial where defendant Cartwright contended that the comments implied that Cartwright "partied" with a person on probation. None of the statements linked Cartwright to the use or sale of unlawful drugs, and the fact that the prospective juror had a probation officer was not enough to infer that Cartwright was involved with illegal drugs.

**11. Criminal Law— instructions—invited error**

There was no plain error by charging the jury on out-of-court statements where the instruction was requested and drafted by defendant. Any error was invited.

Appeal by Defendants from judgments entered 13 April 2006 by Judge Cy Anthony Grant, Sr. in Superior Court, Dare County. Heard in the Court of Appeals 6 June 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General Marc Bernstein and Special Deputy Attorney General J. Allen Jernigan, for the State.*

*Thomas R. Sallenger for Defendant-Appellant Kenneth James Wiggins; William D. Spence for Defendant-Appellant Robert Alphonso Cartwright.*

McGEE, Judge.

Kenneth James Wiggins (Wiggins) and Robert Alphonso Cartwright (Cartwright) (collectively Defendants) were arrested on various drug-related charges after police found cocaine, drug paraphernalia, and opium derivatives in the vehicle in which they were riding and in their hotel rooms. Wiggins was convicted of (1) trafficking in cocaine by possession; (2) trafficking in cocaine by transportation; (3) possession of cocaine with intent to sell; (4) conspiracy to traffic cocaine by possession; (5) possession of drug paraphernalia; and (6) trafficking in opium by possession. Cartwright was convicted of (1) trafficking in cocaine by possession; (2) trafficking in cocaine by transportation; (3) possession of cocaine with intent to sell; and (4) conspiracy to traffic in cocaine by possession. Defendants appeal.

Before pretrial motions on 12 April 2006, Cartwright moved for a mistrial based upon comments made by a prospective juror during jury selection. During jury selection, a prospective juror commented that he knew Cartwright because he had "partied" with Cartwright. The prospective juror was also asked if he knew "anyone else within the bar" and the prospective juror indicated he knew his probation officer and pointed to a probation officer. Cartwright argued that these comments implied that the prospective juror was on probation, and that the prospective juror "[hung] out [and] partie[d] with" Cartwright, and that this implication tainted the jury. The trial court denied Cartwright's motion.

At trial, Deputy Kevin Duprey (Deputy Duprey), a narcotics investigator with the Dare County Sheriff's Department, testified that on 18 October 2004, while training outside of Dare County, he was contacted by a confidential informant (the informant). The informant stated that Defendants would be going to a hotel room the following day "to use and sell drugs." Deputy Duprey stated that although he had spoken with the informant prior to that day, the informant had not done any work with the Dare County Sheriff's Department. The informant had, however, worked with the Chowan County Sheriff's Department, and had been "productive" and "reliable[.]"

Deputy Duprey testified that the informant called him again on 19 October 2004 and stated that Defendants were staying at the Quality Inn in Kill Devil Hills in Rooms 208 and 209. The informant described the vehicle Defendants were using as "a red over black pickup truck." The informant described Wiggins as a male "in his forties with short

brown hair and skinny with some facial hair." The informant described Cartwright as being "bald with a goatee." Deputy Duprey testified that after receiving this information, he contacted a sergeant to act on the information while Deputy Duprey was out of the county.

Deputy Duprey testified that the informant called him again on 20 October 2004 and stated that Wiggins would be leaving Dare County to travel to Gates County to pick up cocaine, and he would then return to the Quality Inn. The informant was unsure as to whether Cartwright would be accompanying Wiggins. The informant also stated that Wiggins had a handgun, but he was unsure whether Wiggins would take the gun with him. The informant again provided Deputy Duprey with a physical description of both Defendants and a description of Defendants' vehicle.

Deputy Duprey testified that he returned to Dare County at approximately 7:30 p.m. on 20 October 2004 and waited in Currituck to see if a red and black pickup truck would pass him, traveling toward Dare County. At approximately 11:15 p.m., Deputy Duprey observed a vehicle that matched the informant's description. Deputy Duprey testified that he observed two males in the vehicle who matched the informant's description. Deputy Duprey followed the vehicle from Currituck to the Quality Inn in Dare County. Deputy Duprey and other law enforcement officers who were waiting at the Quality Inn surrounded the vehicle. Wiggins was driving and Cartwright was riding in the passenger seat. The officers informed Defendants they were being stopped because of information the officers had received that Defendants were bringing drugs into Dare County. Deputy Duprey testified that Wiggins stated "he didn't have anything" and that the officers "could look." Defendants were separated and Deputy Duprey contacted a canine unit. Deputy Duprey stated that when he spoke with Defendants separately, each gave a different account of where they had been.

During this portion of Deputy Duprey's testimony, Defendants objected to testimony regarding the statements made to Deputy Duprey by the informant. Outside the presence of the jury, Cartwright's attorney argued that the statements were hearsay and requested a limiting instruction to avoid jury confusion. The State argued that the statements were not hearsay because they were not offered to prove the truth of the matter asserted, but rather, were offered to explain the actions of Deputy Duprey. The trial court agreed the testimony was not hearsay, but agreed to give a limiting instruction. The trial court asked Cartwright's attorney to draft the

instruction he would like the trial court to give the jury. The trial court ultimately included that instruction in its charge to the jury.

Deputy Duprey testified that a canine unit was deployed on the vehicle. The dog was trained to alert officers by scratching and/or biting at a specific area if the dog smelled a controlled substance. Deputy Duprey testified that the dog scratched at the passenger side of the vehicle and at the console area inside the vehicle. The officers searched the inside of the vehicle. In the console, the officers found digital scales and a .25 caliber handgun magazine containing one bullet.

Deputy Duprey testified that he opened the hood of the vehicle because the hood was a common place for drugs to be hidden. He saw a plastic bag inside the right side of the fender well. He described the bag as "very clean[.]" The officers brought the dog back to the vehicle, and the dog "scratch[ed]" and "pull[ed]" at the area where the bag was located. Deputy Duprey removed the bag from the vehicle. He saw a "very clean" shirt inside the bag. He unrolled the shirt, smelled the odor of cocaine, and saw a bag containing white powder. Deputy Duprey testified that he then placed Defendants under arrest.

Deputy Duprey asked Wiggins whether there was any contraband in his hotel room, and Wiggins stated that there was "some marijuana and paraphernalia." Cartwright told Deputy Duprey that his room contained paraphernalia, but no drugs. Both Defendants consented to a search of their rooms.

According to Deputy Duprey's testimony, Wiggins was staying in Room 208 of the Quality Inn. When Deputy Duprey entered Room 208, he found various items that had been converted into devices used for smoking drugs, including a pill bottle that had been converted for use in smoking marijuana, and "a brass-type abrillo pad" used for smoking crack cocaine. He also found several marijuana smoking pipes, a bottle of Clear Eyes, a second pill bottle, push rods used to clean out or pack a pipe, and a spoon containing white powder and burn marks suggesting that it had been used to liquify cocaine for injection. Deputy Duprey also recovered some white pills and some red and white pills in a brown bag in Room 208. In the same brown bag, Deputy Duprey recovered what he believed to be marijuana. In a black bag, he found a .25 caliber handgun containing six bullets. On a table, he found an open box of baking soda, which he stated could be used to create a base to turn cocaine into a solid, and a lighter. The

State asked Deputy Duprey whether he was able to determine if another individual was staying with Wiggins. Deputy Duprey testified that some items in Room 208 could have belonged to another person, but the officers "never physically saw [another] person inside that room."

Deputy Duprey testified that he next searched Room 209, Cartwright's room. Deputy Duprey observed a crack pipe and a needle. Deputy Duprey testified that he did not seize the items he saw in Cartwright's room.

Deputy Duprey also testified that the reports received from the State Bureau of Investigation revealed (1) that the bag found in the vehicle contained 54.3 grams of cocaine hydrochloride; (2) that the white pills found in Room 208 were oxycodone and weighed 5.2 grams; and (3) that the white and red pills were a "pharmaceutical preparation containing oxycodone[,]" an opium derivative, and weighed 3.2 grams. He testified that the amount of cocaine found in the vehicle was an amount of cocaine that a person "would possess to sell."

On cross-examination by the attorney for Wiggins, Deputy Duprey was asked whether an individual named Nicole Ballard was staying in the hotel room with Wiggins. Deputy Duprey answered:

I have no clue [whether] she was staying in the room. She was not seen in the room. There [were] pictures found of her inside the room but we [didn't] see[] that she was actually inside the room.

Deputy Duprey was also asked:

[Attorney for Wiggins]: Investigator Duprey, do you have any further knowledge of Nicole Ballard staying in the hotel room with Mr. Wiggins?

[Deputy Duprey]: Except for his statement that she stayed there. Other than that, I do not.

[Attorney for Wiggins]: She wasn't present at the hotel during the arrest, is that correct?

[Deputy Duprey]: That's correct.

[Attorney for Wiggins]: But there was some of her stuff in the hotel room?

. . .

[Deputy Duprey]: There [were] two pictures of her. There [were] female clothing items in the room.

Major Norman Johnson (Major Johnson), with the Dare County Sheriff's Department, testified that at the time of Defendants' arrest, Major Johnson was "the sergeant of narcotics" for the Dare County Sheriff's Department. Major Johnson testified that he spoke with Deputy Duprey on 19 October 2004. Deputy Duprey asked Major Johnson to verify the information Deputy Duprey had received from the informant regarding the red and black pickup truck and the hotel rooms at the Quality Inn. Major Johnson located the vehicle in the parking lot of the Quality Inn, obtained the tag number, and noted some specific stickers on the vehicle. Major Johnson observed a white female go to Room 208 and knock on the door. He saw a "skinny" white male with brown hair open the door, have a short conversation with the female, and close the door. The female then went to Room 209 and knocked on the door. A "bald" white male answered the door, but he shut the door very quickly. The female then knocked again on the door of Room 208, but she received no answer. She then knocked again on the door of Room 209, but she received no answer. She waited for a few minutes and then left. Major Johnson testified that he recognized the woman as a known drug user and seller. Although Major Johnson could not recall whether he or Deputy Duprey ran the vehicle's tag, they learned the vehicle was registered to Wiggins.

Major Johnson testified that he spoke with Deputy Duprey again on 20 October 2004. Deputy Duprey told Major Johnson that he had received further information that Defendants would be traveling to Gates County that day to pick up cocaine. Major Johnson returned to the Quality Inn and saw that the vehicle was still there. He returned to the Quality Inn forty-five minutes later and the vehicle was gone. After determining that the vehicle was not at a local bar, Major Johnson returned to the Quality Inn to wait for the vehicle to return. Major Johnson was present for the arrest of Defendants and the search of their rooms.

Clint Friddle (Friddle), general manager of the Quality Inn, testified that Cartwright paid for the rental of Rooms 208 and 209. Friddle testified that both rooms contained two double beds, and that two adults were registered in Room 208. The State rested its case.

Defendants moved to dismiss each of the charges against them. The trial court denied Defendants' motions. Neither Wiggins nor

Cartwright presented any evidence. Cartwright also moved for a mistrial based upon Deputy Duprey's testimony referencing the statements made by the informant. Cartwright argued that, pursuant to N.C. Gen. Stat. § 8C-1, Rule 403, admission of the statements was "confusing and prejudicial to the jury." The trial court denied the motion.

## I. Joint Issues

Although Defendants filed separate briefs, they bring forward several identical issues for our review, which we address together.

### A. Statements of the informant

[1] Defendants argue that the trial court improperly admitted testimony regarding the statements made by the informant to Deputy Duprey in violation of Defendants' constitutional right to confrontation under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), and under state evidence rules.

In *Crawford*, the United States Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 158 L. Ed. 2d at 203. However, where nontestimonial evidence is at issue, the ordinary rules of evidence govern admissibility. *Id.* In its analysis, the Court also noted that the Confrontation Clause does not prohibit "the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59, n.9, 158 L. Ed. 2d at 198, n.9.

In *State v. Leyva*, 181 N.C. App. 491, 640 S.E.2d 394 (2007), our Court addressed an argument similar to the one before us now. In *Leyva*, the trial court admitted testimony by detectives referencing statements made by a confidential informant. *Id.* at 498-99, 640 S.E.2d at 398-99. The defendant argued that his right to confrontation was violated by admission of that evidence. *Id.* at 500, 640 S.E.2d at 399. We concluded that the defendant incorrectly categorized the statements as testimonial because the evidence was introduced to explain the officers' presence at the location of a drug sale, not for the truth of the matter asserted. *Id.*

Applying *Crawford* and *Leyva* to the present case, we find no error in the admission of Deputy Duprey's testimony referencing the statements of the informant. The State specifically noted that the statements were not offered for their truth. Rather, the statements

were offered to explain how the investigation of Defendants unfolded, why Defendants were under surveillance at the Quality Inn, and why Deputy Duprey followed the vehicle to the Quality Inn. We further note that, as requested by Cartwright, the trial court gave the jury a limiting instruction pertaining to confidential informants. The instruction read:

> Evidence has been received of statements made by a confidential informant. You must not consider this evidence as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe that these statements were made then you may consider this evidence for the purpose of explaining the actions of the investigating officers. Except as it bears upon the actions of the investigating officers, the statements made by the confidential informant may not be used by you in your determination of any fact in this case.

*Crawford* explicitly states that testimonial statements are not barred by the Confrontation Clause if not offered for their truth. *Crawford*, 541 U.S. at 59, n.9, 158 L. Ed. 2d at 198, n.9. Because the challenged testimony was not offered for its truth, as was the case in *Leyva*, we conclude that no *Crawford* error occurred.

**[2]** Wiggins also argues that the testimony was inadmissible hearsay. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 801(c) (2005) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Our Supreme Court has stated that "[o]ut-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay. Specifically, statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed." *State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (citations omitted), *cert. denied, Gainey v. North Carolina*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002). Further, in *Leyva*, this Court applied the same reasoning to find that statements made to an officer by a confidential informant were properly admitted as nonhearsay. *Leyva*, 181 N.C. App. at 500-01, 640 S.E.2d at 399-400. As stated above, the challenged testimony was not offered for its truth and was therefore not inadmissible hearsay.

**[3]** Both Defendants argue that the statements were also inadmissible under N.C. Gen. Stat. § 8C-1, Rule 403. We note that our review

of the transcript reveals that Wiggins did not object on this basis at trial. By failing to obtain a ruling from the trial court, Wiggins failed to properly preserve this issue for our review pursuant to N.C.R. App. P. 10(b)(1). Further, even had Wiggins properly preserved this issue, and as it applies to Cartwright, we see no error in the trial court's decision.

[4] Pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 (2005), "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The decision regarding "[w]hether to exclude relevant but prejudicial evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992). Neither Defendant articulates an abuse of discretion, and we see none. Therefore, we overrule the relevant assignments of error.

We also note that Cartwright moved for a mistrial based upon the admission of this testimony. In his brief, Cartwright incorporates his argument that the testimony was improperly admitted under N.C. Gen. Stat. § 8C-1, Rule 403, to argue that the trial court improperly denied his motion for a mistrial on this basis. Because we have concluded that the trial court did not abuse its discretion by admitting this evidence, we also overrule this assignment of error.

## B. Sufficiency of the State's evidence

Defendants next argue that the trial court erred by denying their motions to dismiss the following charges: (1) trafficking in cocaine by possession; (2) trafficking in cocaine by transportation; (3) possession of cocaine with intent to sell; and (4) conspiracy to traffic in cocaine by possession. We consider each charge separately.

When a defendant moves to dismiss based on insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each element of the crime charged and of the defendant being the perpetrator. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). " 'Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt.' " *State v. Alston*, 131 N.C. App. 514, 518, 508 S.E.2d 315, 318 (1998) (quoting *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986)). "The evidence must be viewed in the light most favorable to the State, and the State must receive every reasonable inference to

be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) (citations omitted).

## 1. Trafficking in cocaine by possession

**[5]** N.C. Gen. Stat. § 90-95(h)(3) (2005) provides that "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . . . shall be guilty of a felony . . . known as 'trafficking in cocaine[.]' " Further, "[s]ale, manufacture, delivery, transportation, and possession of 28 grams or more of cocaine as defined under N.C.G.S. § 90-95(h)(3) are separate trafficking offenses for which a defendant may be separately convicted and punished." *State v. Garcia*, 111 N.C. App. 636, 641, 433 S.E.2d 187, 190 (1993). To establish trafficking by possession, the State must show that a defendant (1) knowingly possessed a given controlled substance; and (2) that the amount possessed was greater than 28 grams. *State v. Shelman*, 159 N.C. App. 300, 305, 584 S.E.2d 88, 93, *disc. review denied*, 357 N.C. 581, 589 S.E.2d 363 (2003).

Our Supreme Court has noted that

possession of a controlled substance may be either actual or constructive. A person is said to have constructive possession when he, without actual physical possession of a controlled substance, has both the intent and the capability to maintain dominion and control over it.

*State v. Jackson*, 103 N.C. App. 239, 243, 405 S.E.2d 354, 357 (1991) (citations omitted), *aff'd per curiam*, 331 N.C. 113, 413 S.E.2d 798 (1992). "Moreover, power to control [an] automobile where a controlled substance was found is sufficient, in and of itself, to give rise to the inference of knowledge and possession sufficient to go to the jury." *State v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 886 (1984). Further, we have held that "evidence that [the defendant] owned the van and was present therein when the controlled substance was found was sufficient to allow the jury to infer that he had the power and intent to control the contraband found there." *State v. Thompson*, 37 N.C. App. 628, 636, 246 S.E.2d 827, 833 (1978), *aff'd*, 296 N.C. 703, 252 S.E.2d 776, *cert. denied*, *Thompson v. North Carolina*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979). "However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before

constructive possession may be inferred." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989).

In the present case, Wiggins argues there was no evidence that he actually or constructively possessed any cocaine. We disagree. We note that the State's evidence tended to show that the officers recovered 54.3 grams of cocaine in the fender well of the vehicle, which was registered to, and driven by, Wiggins. This evidence was sufficient "to give rise to the inference of knowledge and possession sufficient to go to the jury." *Dow*, 70 N.C. App. at 85, 318 S.E.2d at 886. Further, digital scales were found in the center console of the vehicle, and paraphernalia for use with cocaine was found in Wiggins' hotel room. Accordingly, we find that the trial court did not err by denying Wiggins' motion to dismiss the charge of trafficking in cocaine by possession.

**[6]** Cartwright argues that he was a mere passenger in a vehicle in which cocaine was recovered and that this fact, without more, was insufficient to submit the case to the jury. In support of his argument, Defendant cites *State v. Weems*, 31 N.C. App. 569, 230 S.E.2d 193 (1976). In *Weems*, the defendant was sitting in the right front seat of a vehicle which was stopped by police. *Id.* at 570, 230 S.E.2d at 194. A search of the automobile revealed packets of heroin in three different areas of the vehicle, two of which were near the defendant's seat. *Id.* There was no evidence the defendant owned or controlled the vehicle, nor was there evidence he had ever been in the vehicle prior to the short time during which police observed him in the vehicle. *Id.* at 571, 230 S.E.2d at 194. This Court noted that:

> [P]ower and intent to control the contraband material can exist only when one is aware of its presence. Therefore, evidence which places an accused within close juxtaposition to a narcotic drug under circumstances giving rise to a reasonable inference that he knew of its presence may be sufficient to justify the jury in concluding that it was in his possession. 'However, mere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances to convict for possession.'

*Id.* (quoting Annot., 91 A.L.R.2d 810, 811 (1963)). This Court held that there was insufficient evidence to connect the defendant in *Weems* to the illegal substances. *Id.* at 571, 230 S.E.2d at 195.

In the present case, unlike in *Weems*, there was sufficient evidence to infer that Cartwright knowingly possessed the cocaine in the

vehicle. First, Cartwright was a passenger in the vehicle in which the cocaine was found. Deputy Duprey testified that when questioned as to their purpose for traveling, Wiggins and Cartwright provided different explanations to the officers as to why they had traveled to Gates County together. A drug-sniffing dog located digital scales and a .25 caliber handgun in the console between Wiggins' seat and Cartwright's seat. Further, the cocaine found in the fender well was located in a clean plastic bag that appeared to have been recently placed under the hood. Wiggins and Cartwright were also staying in adjacent hotel rooms, both of which Cartwright rented. A known drug seller and user visited the rooms of both Wiggins and Cartwright the day before their arrest. Deputy Duprey found drug paraphernalia associated with cocaine when he searched Cartwright's room. Thus, unlike in *Weems*, Cartwright was not simply found in close proximity to the cocaine found in the vehicle. Rather, the State presented evidence of other incriminating circumstances which permitted the inference that Cartwright had knowledge of the cocaine under the vehicle's hood. Both Defendants' assignments of error pertaining to this charge are overruled.

## 2. Trafficking in cocaine by transportation

Both Defendants assigned error to the trial court's denial of their motions to dismiss the charge of trafficking in cocaine by transportation. Wiggins articulated no specific argument as to this charge. Cartwright confined his argument on this point to the contention that the State failed to show Cartwright's knowledge of the cocaine. We concluded above that the State produced sufficient evidence to support a finding of knowledge on the part of both Defendants. Therefore, for the same reasons stated above, we overrule the assignments of error pertaining to this charge.

## 3. Possession of cocaine with intent to sell

[7] "Under the charge of possession with the intent to sell or deliver cocaine, the State has the burden of proving: (1) the defendant possessed the controlled substance; and (2) with the intent to sell or distribute it." *State v. Diaz,* 155 N.C. App. 307, 319, 575 S.E.2d 523, 531 (2002), *cert. denied,* 357 N.C. 464, 586 S.E.2d 271 (2003).

Defendants argue only that the State's evidence of possession was insufficient as to this charge. For the same reasons stated above, we conclude that the trial court did not err by denying Defendants' motion to dismiss this charge.

### 4. Conspiracy to traffic in cocaine by possession

[8] To prove criminal conspiracy, the State must prove "an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner." *State v. Worthington*, 84 N.C. App. 150, 162, 352 S.E.2d 695, 703, *disc. review denied*, 319 N.C. 677, 356 S.E.2d 785 (1987). The State need not prove an express agreement. *Id.* Evidence tending to establish a "mutual, implied understanding will suffice to withstand a defendant's motion to dismiss." *Id.* Further,

"[d]irect proof of conspiracy is rarely available, so the crime must generally be proved by circumstantial evidence." *State v. Burmeister*, 131 N.C. App. 190, 199, 506 S.E.2d 278, 283 (1998). A conspiracy "may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E.2d 711, 712 (1933).

*State v. Clark*, 137 N.C. App. 90, 95, 527 S.E.2d 319, 322 (2000).

When viewed in the light most favorable to the State, the evidence in the present case tended to show that Defendants stayed in two adjacent hotel rooms, both of which were rented and paid for by Cartwright. Major Johnson testified that a known drug user and seller knocked on Wiggins' door, then knocked on Cartwright's door. At the time the cocaine was recovered, Defendants were together in Wiggins' vehicle, after having traveled together into Dare County. The hotel rooms of both Defendants contained drug paraphernalia, and both rooms contained paraphernalia for use with cocaine. We conclude that this evidence, taken collectively, permitted the inference that Defendants had a "mutual implied understanding" sufficient to survive Defendants' motion to dismiss the conspiracy charge.

### II. Wiggins' Remaining Issue

[9] Wiggins also argues that the State did not produce substantial evidence of his possession of the opium derivative recovered in his hotel room because he did not have exclusive control of the room. We disagree.

N.C. Gen. Stat. § 90-95(h)(4) (2005) provides that "[a]ny person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate" is guilty of trafficking in opium or heroin. If a defendant does not maintain exclusive control of the

place where the controlled substance is found, the State must show "other incriminating circumstances" to permit the inference of constructive possession. *State v. Butler*, 147 N.C. App. 1, 11, 556 S.E.2d 304, 311 (2001), *aff'd*, 356 N.C. 141, 567 S.E.2d 137 (2002). " 'No single factor controls, but ordinarily the questions will be for the jury[.]' " *Id.* (quoting *Jackson*, 103 N.C. App. at 243, 405 S.E.2d at 357). Further, "[t]he State is not required to prove that the defendant owned the controlled substance, or that [the] defendant was the only person with access to it." *State v. Rich*, 87 N.C. App. 380, 382, 361 S.E.2d 321, 323 (1987) (citations omitted).

We first note that the evidence was conflicting as to whether Wiggins maintained exclusive control over Room 208 of the Quality Inn. Deputy Duprey testified that he was "not able to determine" whether another individual was staying in Room 208 with Wiggins. T.164. He further stated that the law enforcement officers watching the room "never physically saw [another] person inside the room." However, Deputy Duprey also testified that some items in the room "possibly belonged to another person." Friddle's testimony also established that the registration cards for the hotel rooms indicated that there were two double beds and two adults registered in Room 208. Therefore, we conclude that to establish constructive possession, the State was required to show evidence of "other incriminating circumstances." *Butler*, 147 N.C. App. at 11, 556 S.E.2d at 311.

Viewing the evidence in the light most favorable to the State, we find the State produced sufficient evidence that Wiggins constructively possessed the opium derivative. Wiggins consented to a search of Room 208 where the pills were found and he admitted to Deputy Duprey that marijuana and other paraphernalia would be found in the room. The pills were found in the same brown bag as the marijuana. Further, Major Johnson testified that he saw a man matching the general description of Wiggins open the door to Room 208 the day before Wiggins was arrested and Room 208 was searched. Based upon these circumstances, we conclude that the State produced sufficient evidence that Wiggins constructively possessed the opium derivative to survive Wiggins' motion to dismiss this charge. We overrule this assignment of error.

### III.  Cartwright's Remaining Issues

Cartwright also brings the following issues before this Court: (1) whether the trial court erred by denying his motion for a mistrial based on remarks made during jury selection; and (2) whether the

trial court committed plain error by charging the jury as to the statements of the informant.

## A. Motion for mistrial based upon jury selection

**[10]** N.C. Gen. Stat. § 15A-1061 (2005) provides that:

> Upon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

"The decision whether to grant a motion for mistrial rests within the sound discretion of the trial judge and will not ordinarily be disturbed on appeal absent a showing of abuse of that discretion." *State v. Primes*, 314 N.C. 202, 215, 333 S.E.2d 278, 286 (1985).

Cartwright argues that his motion for a mistrial should have been granted because the statements made by the prospective juror in the presence of the other prospective jurors tainted the jury. At trial, Cartwright argued that the implications of the statements were that Cartwright "partie[d]" with a person on probation for an unknown offense.

In support of this argument, Cartwright cites *State v. Mobley*, 86 N.C. App. 528, 358 S.E.2d 689 (1987). We find *Mobley* to be distinguishable from the present case. In *Mobley*, during jury selection, a potential juror "identified himself as a police officer [and] stated that he had 'dealings with the defendant on similar charges' " in the presence of the other potential jurors. *Id.* at 532, 358 S.E.2d at 691. The trial court then "excused the juror and instructed the jury: . . . 'to strike from their mind any reference the officer may have made to the defendant because it is not evidence in the case.' " *Id.* at 532-33, 358 S.E.2d at 691. On appeal, this Court granted the defendant a new trial, holding that "[a] statement by a police officer-juror that he knows the defendant from 'similar charges' is likely to have a substantial effect on other jurors. The potential prejudice to the defendant is obvious." *Id.* at 533, 358 S.E.2d at 692. This Court also noted that "the trial court, at the least, should have made inquiry of the other jurors as to the effect of the statement." *Id.* at 534, 358 S.E.2d at 692.

In *State v. McAdoo*, 35 N.C. App. 364, 241 S.E.2d 336, *disc. review denied*, 295 N.C. 93, 244 S.E.2d 262 (1978), each of the defendants

argued that the trial court erred by failing to grant their motions for a mistrial when a potential juror announced in the presence of the other potential jurors that a defendant had tried to steal a power saw from him. *Id.* at 366, 241 S.E.2d at 337. The defendant's attorney was then permitted to ask if it was true the defendant was found not guilty of the charge, to which the juror answered, "yes." *Id.* The trial court denied the defendant's motion for a mistrial. *Id.* On appeal, this Court affirmed the trial court's decision, holding that the potential juror's statement was not "so prejudicial as to require a new trial." *Id.* at 366, 241 S.E.2d at 338.

Cartwright argues that, like the comments made in *Mobley,* the prospective juror's comments had a substantial effect on the other jurors and "tended to color [Cartwright] as the very type [of] person who would deal (and had dealt) with unlawful drugs and prejudiced his case from the very beginning of the trial." In the present case, however, the prospective juror's statements did not contain the same potential for prejudice as the police officer's comments in *Mobley.* None of the statements indicated Cartwright had been involved in the use or sale of unlawful drugs. Moreover, the fact that the prospective juror had a probation officer was not enough to infer that Cartwright was involved with illegal drugs, nor did it result in "substantial and irreparable prejudice" to Cartwright's case. N.C.G.S. § 15A-1061. We hold that the prospective juror's statements in the present case, like *McAdoo,* were not "so prejudicial as to require a new trial." *McAdoo,* 35 N.C. App. at 366, 241 S.E.2d at 338. Thus, this assignment of error is overruled.

### B. Jury charge on informant's statements

[11] Lastly, Cartwright argues that the trial court committed plain error by charging the jury on the out-of-court statements made by the informant to Deputy Duprey. We point out that the trial court's inclusion of this instruction was at Cartwright's request. Further, the trial court asked Cartwright's attorney to draft the instruction he desired, and the trial court then included that language in its final instructions. "A criminal defendant will not be heard to complain of a jury instruction given in response to his own request." *State v. McPhail,* 329 N.C. 636, 643, 406 S.E.2d 591, 596 (1991). While we express no opinion as to whether giving the instruction was error, "[a]ny error in the giving of this jury instruction was invited by [Cartwright.]" *State v. Duke,* 360 N.C. 110, 124, 623 S.E.2d 11, 21 (2005), *cert. denied, Duke v. North Carolina,* —— U.S. ——, 166

L. Ed. 2d 96 (2006). We therefore overrule Cartwright's assignment of error on this issue.

Defendants do not argue their remaining assignments of error and we therefore deem them abandoned pursuant to N.C.R. App. 28(b)(6).

No error.

Judges STEPHENS and SMITH concur.