STATE OF NORTH CAROLINA v. EVERETTE DUSTIN McGEE

No. COA08-1285

(Filed 2 June 2009)

### 1. Conspiracy— malicious assault in secret manner—instruction—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of conspiracy to maliciously assault in a secret manner and by instructing the jury on that charge because in the light most favorable to the State, the circumstances show a reasonable inference that defendant and others conspired to assault the victims on the road when: (1) the two groups of men were feuding with each other, and a confrontation had occurred earlier that night; (2) defendant's statement about planning to meet other people was uncorroborated; (3) defendant had two others accompany him with weapons and then told them to hide in the woods; and (4) when the victims approached defendant, the others ran out of the woods and vehicle to assault the two victims.

### 2. Accomplices and Accessories— accessory after fact—assault with deadly weapon with intent to kill inflicting serious injury—instruction—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of accessory after the fact of assault with a deadly weapon with intent to kill inflicting serious injury and by instructing the jury on that charge even though the principal person pled guilty to a lesser- included offense because: (1) the principal pled guilty, albeit to a lesser-included offense, and there was no acquittal; (2) N.C.G.S. § 14-7 provides that an accessory after the fact may be indicted and convicted regardless of whether the principal has been previously convicted; and (3) the State presented substantial evidence of the charge, including that the principal admitted to stabbing the victim with his knife; defendant told police the principal stabbed the victim; the principal testified that he gave his knife to defendant to get rid of it; the testimony was corroborated by another witness who saw the principal give his knife to defendant; and the witness testified that she and the principal went back to defendant's residence the day after the incident to retrieve the knife, and defendant told them he had thrown the knife away.

STATE v. McGEE

[197 N.C. App. 366 (2009)]

Appeal by defendant from judgment entered 23 May 2008 by Judge Edgar B. Gregory in Forsyth County Superior Court. Heard in the Court of Appeals 25 March 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*Reita P. Pendry, for defendant-appellant.*

STEELMAN, Judge.

The State presented substantial evidence to support each of the charges of a conspiracy to commit malicious assault in a secret manner and accessory after the fact of assault with a deadly weapon with intent to kill inflicting serious injury. The fact that the perpetrator of an offense pleads guilty to a lesser-included offense does not exculpate a defendant on a charge of accessory after the fact.

## I. Factual and Procedural Background

In the light most favorable to the State, the evidence presented tended to show that on 9 November 2006, a melee occurred in Winston-Salem, which resulted in one person seriously injured by assault and another person killed by a gunshot.

On the afternoon of 9 November 2006, Richard Happel (Happel) went to Colt Barber's (Barber) residence to visit with Barber and Brian Brooks (Brooks). At about 7 p.m., Happel, Barber, and Brooks went to Dennis Tullock's (Tullock) residence. Barber and Brooks wanted to speak to Tullock about "rumors that were going around[,]" and Happel was to be the mediator. Tullock was not home so they went to another residence to locate him. Tullock refused to talk to Barber and Brooks, and then Happel, Barber, and Brooks went back to Barber's residence.

After refusing to talk to Barber and Brooks, Tullock went back to his residence. Anthony "Bear" Davis (Davis), Dustin Everette McGee (defendant), Austin McGee (Austin), and Billy Ray "Willie" Hilterbrand (Hilterbrand) showed up at Tullock's residence asking him if anything was wrong. Tullock testified he told them that Happel, Barber, and Brooks had come looking for him, and he was scared they would come back to his house. Davis and Tullock are first cousins, and the others are friends of Tullock. Davis, defendant, Austin, and Hilterbrand then left Tullock's residence.

After returning to Barber's residence, Happel, Barber, and Brooks drank alcohol, smoked marijuana, and took klonopin pills. They played a drinking game, which involved a stun gun. Brooks passed out, and Happel and Barber duct-taped him to a chair and shaved his head. Barber "did a lot of coke[,]" and he and Happel walked to a gas station on Old Hollow Road. The stun gun was in Happel's pocket. Happel was also carrying a small pocketknife. The store was closed so they walked back to Barber's residence.

A vehicle containing Davis, Hilterbrand, Ashley Williams (Williams), and Jessica Martiere (Martiere) passed Happel and Barber on Old Hollow Road as they were driving to defendant's residence. The four people inside the vehicle started screaming at Happel and Barber. The two decided to take an alternate route via Ozark Road back to Barber's residence.

At about the same time, defendant, Geoffrey Lamoreaux (Lamoreaux), and Austin left defendant's residence for a meeting on Ozark Road. Defendant later stated to Trooper Brent Daniels (Trooper Daniels) that he was going to meet Josh and Taylor White. Defendant told Trooper Daniels that Austin had a butcher knife, and Lamoreaux had a baseball bat. No one corroborated defendant's statement about meeting the Whites.

When the three men reached Ozark Road, defendant told Austin and Lamoreaux to stay in the woods. Defendant told Trooper Daniels, "They were there to make sure nothing was going to happen to me." Witnesses also identified defendant's father, Dueran McGee (Dueran), as being present in the woods.

As Happel and Barber were walking on Ozark Road, they saw defendant standing to the side of the road. Barber approached defendant to speak with him. The same vehicle, which had previously passed them, drove up, and Hilterbrand and Davis jumped out. Happel thought one of the men had a gun so he threw his hands up. Hilterbrand had a knife. Happel heard footsteps running toward him from behind, and he "pretty much was assaulted." The men who were in the woods ran out and attacked Happel. Witnesses differed on the precise sequence of events.

Hilterbrand stated that after driving past Happel and Barber on Old Hollow Road, the people in the vehicle went to defendant's residence and found defendant's girlfriend to be "hysterical." She told them that defendant, Austin, and Lamoreaux had already left for a

meeting on Ozark Road. The people in the vehicle immediately drove to meet defendant. Hilterbrand stated that when he saw the stun gun, he pulled his knife out and stabbed Happel two or three times. Happel was severely beaten and stabbed in his abdomen, chest, back, and head. He ran through the woods to a nearby residence for help. As Happel ran, he heard gunshots. Happel's injuries required surgery and extended hospitalization. Lamoreaux was shot and killed.

Hilterbrand testified that after the incident, he and other people went back to defendant's residence, where he "washed the knife off and wiped the prints off of it and gave it to [defendant]." Defendant did not say anything to Hilterbrand, "He just took it." Williams also testified that she saw defendant take the knife from Hilterbrand. The next day, Hilterbrand and Williams went back to defendant's residence to retrieve the knife, and Williams said defendant stated "he had thrown it, but he didn't remember where it was."

Defendant was indicted for the crimes of felony conspiracy to maliciously assault in a secret manner, accessory after the fact of maliciously assaulting in a secret manner, and accessory after the fact of assault with a deadly weapon with intent to kill inflicting serious injury. At the close of the State's evidence, the trial court dismissed the charge of accessory after the fact of maliciously assaulting in a secret manner. On 23 May 2008, the jury returned verdicts of guilty of accessory after the fact of assault with a deadly weapon with intent to kill inflicting serious injury and guilty of conspiracy to commit malicious assault in a secret manner. The offenses were consolidated for sentencing, and the trial court imposed an active sentence of 29-44 months imprisonment.

Defendant appeals.

## II. Conspiracy to Commit Malicious Assault in a Secret Manner

[1] In his first and second arguments, defendant contends the trial court erred in denying defendant's motion to dismiss the charge of conspiracy to maliciously assault in a secret manner and erred in instructing the jury on that charge. We disagree.

" '[I]n ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the crime and whether the defendant is the perpetrator of that crime.'" *State v. Ford*, 194 N.C. App. 468, 472-73, 669 S.E.2d 832, 836 (2008) (quoting *State v. Everette*, 361 N.C. 646, 651, 652 S.E.2d 241, 244 (2007)).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The terms "more than a scintilla of evidence" and "substantial evidence" are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary.

*State v. Earnhardt,* 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (citations and quotations omitted). The trial court is to consider the evidence in the light most favorable to the State. *Id.* at 67, 296 S.E.2d at 652.

The State's theory on this charge was that defendant conspired with Austin and Lamoreaux, and perhaps Dueran, to commit the felony of malicious assault upon Happel in a secret manner by having the men wait in the woods to assault Happel.

To establish a conspiracy, the State must prove an agreement between two or more people to commit an unlawful act or to commit a lawful act in an unlawful manner. *State v. Wiggins,* 185 N.C. App. 376, 389, 648 S.E.2d 865, 874 (citations omitted), *disc. review denied,* 361 N.C. 703, 653 S.E.2d 160-61 (2007). The State need not prove an express agreement. *Id.* Evidence that establishes a mutual, implied understanding is sufficient to withstand a motion to dismiss. *Id.* (citation omitted); *see also State v. Whiteside,* 204 N.C. 710, 169 S.E. 711 (1933) (Conspiracy generally established by indefinite acts and circumstantial evidence).

In the instant case, the evidence presented at trial, taken in the light most favorable to the State, showed the sequence of the events on 9 November 2006 to be: (1) Happel, Barber, and Brooks went looking for Tullock so they could speak with him; (2) Tullock tells defendant, Hilterbrand, Davis, and Austin that Happel and Barber are looking for him, and Tullock is afraid they will come back; (3) Hilterbrand and Davis drive past Happel and Barber as they are walking along Old Hollow Road; (4) defendant goes to a meeting on Ozark Road and has Austin and Lamoreaux accompany him and wait in the woods; Austin has a butcher knife; and Lamoreaux has a baseball bat; and (5) Hilterbrand and others find defendant's girlfriend upset about the meeting and drive to meet defendant and participate in the melee.

In determining the sufficiency of this evidence to withstand defendant's motion to dismiss, the test is the same whether the evidence is circumstantial, direct, or both. *State v. Vause,* 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991). "Therefore, if a motion to dismiss calls

into question the sufficiency of circumstantial evidence, the issue for the court is whether a reasonable inference of the defendant's guilt may be drawn from the circumstances." *Id.* (citing *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

In the light most favorable to the State, the circumstances show a reasonable inference that defendant and others conspired to assault Happel and Barber on Ozark Road. The two groups of men were feuding with each other, and a confrontation had occurred earlier that night between Tullock and Happel, Barber, and Brooks. Defendant's statement about planning to meet the Whites is uncorroborated. Defendant had Austin and Lamoreaux accompany him with weapons and then told them to hide in the woods. When Happel and Barber approached defendant, the others ran out of the woods and the vehicle to assault the two men. "A conspiracy 'may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.'" *Wiggins*, 185 N.C. App. at 389, 648 S.E.2d at 874 (quoting *Whiteside*, 204 N.C. at 712, 169 S.E. at 712 (1933)). We hold that the State presented substantial evidence of each of the elements on the offense of a conspiracy to commit malicious assault in a secret manner.

This argument is without merit.

### III. Accessory After the Fact of Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury

[2] In his third and fourth arguments, defendant contends that the trial court erred in denying defendant's motion to dismiss the charge of accessory after the fact of assault with a deadly weapon with intent to kill inflicting serious injury and erred in instructing the jury on that charge. We disagree.

The underlying felony was assault with a deadly weapon with intent to kill inflicting serious injury, and the principal was Hilterbrand based upon the stabbing of Happel. Defendant argues that because Hilterbrand pled guilty to a Class E felony, which was a lesser-included offense of the Class C felony of assault with a deadly weapon with intent to kill inflicting serious injury, that this exculpates defendant from the accessory after the fact charge. Defendant reasons that because a person cannot be convicted of being an accessory after the fact if the principal is acquitted, that Hilterbrand's plea to a lesser offense is the functional equivalent of an acquittal. This is not correct. A lesser-included offense is "[a] crime that is composed

of some, but not all, of the elements of a more serious crime and that is necessarily committed in carrying out the greater crime[.]" *Black's Law Dictionary* 1111 (8th ed. 2004). If the named principal is acquitted, then the accessory after the fact must be acquitted. *State v. Robey*, 91 N.C. App. 198, 208, 371 S.E.2d 711, 717, *disc. review denied*, 323 N.C. 479, 373 S.E.2d 874 (1988). However, in the instant case, the principal pled guilty, albeit to a lesser-included offense, and there was no acquittal.

> If any person shall become an accessory after the fact to any felony, whether the same be a felony at common law or by virtue of any statute made, or to be made, such person shall be guilty of a crime, and may be indicted and convicted together with the principal felon, or after the conviction of the principal felon, or may be indicted and convicted for such crime whether the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice.

N.C. Gen. Stat. § 14-7 (2007). This statute expressly provides that an accessory after the fact may be indicted and convicted regardless of whether the principal has been previously convicted. In the instant case, the named principal was Hilterbrand who admitted to stabbing Happel, and he testified that a lesser plea had been offered. Hilterbrand was not acquitted, his actions have been .adequately established, and defendant's conviction on the accessory charge was proper.

Defendant next argues that the evidence was insufficient to prove the elements of accessory after the fact. In order to convict defendant of being an accessory after the fact, the State must prove: (1) the principal committed the underlying felony, (2) defendant gave personal assistance to the principal to aid in his escaping detection, arrest, or punishment, and (3) defendant knew the principal committed the felony. *State v. Jordan*, 162 N.C. App. 308, 312, 590 S.E.2d 424, 427 (2004) (citations omitted).

In the instant case, Hilterbrand admitted to stabbing Happel with his knife. Defendant also told police that Hilterbrand stabbed Happel. Hilterbrand testified that he gave his knife to defendant to get rid of it. This testimony was corroborated by Williams who saw Hilterbrand give his knife to defendant. Williams testified that she and Hilterbrand went back to defendant's residence the day after the incident to retrieve the knife, and defendant told them he had thrown the knife away. Looking at this  evidence in the light most favorable to the

State, we hold that the State presented substantial evidence that supports the charge of accessory after the fact of assault with a deadly weapon with intent to kill inflicting serious injury.

This argument is without merit.

NO ERROR.

Judges BRYANT and ELMORE concur.